**Donnell WATTS, Appellant,**

v.

**UNITED STATES, Appellee.**

**Donnell L. BENNETT, Appellant,**

v.

**UNITED STATES, Appellee.**

**Jeffrey J. JACKSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 80–1237, 80–1238 and 80–1283.**

District of Columbia Court of Appeals.

Argued June 9, 1982.

Decided Aug. 3, 1982.

Calvin Steinmetz, Washington, D.C., appointed by the court, for appellant Watts.

Dennis M. Hart, Washington, D.C., appointed by the court, for appellant Bennett.

Robert H. Haas, Baltimore, Md., for appellant Jackson.

Catherine R. Mack, Asst. U. S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., and John A. Terry, John R. Fisher, and Charles L. Hall, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KELLY, NEBEKER and FERREN, Associate Judges.

FERREN, Associate Judge:

In these armed robbery cases, appellants assert several grounds for reversal of their convictions. Appellants Watts and Jackson contend that the trial court erred in declining to order a mistrial. They argue that some of the jurors may have seen appellants in the custody of marshals, who were escorting them out the back door of the courtroom, and as a consequence may have

inferred that appellants could not be innocent. Appellant Bennett claims that the trial court erred in denying his motion for a mistrial based on the prosecutor's closing arguments and also committed plain error in admitting testimony that one of the robbers touched one of the victims "in a sexual way." Finding no merit in these contentions, we affirm appellants' convictions.

### I.

On April 30, 1979, a Superior Court grand jury indicted all three appellants on three counts of armed robbery, D.C. Code 1973, §§ 22–2901, –3202, and charged appellants Watts and Jackson, additionally with carrying a pistol without a license. *Id.*, § 22–3204. Appellants' first trial ended in a mistrial. At their second trial, the government presented evidence of the following facts:

At about 10 p.m. on March 20, 1979, Tamara Miller, Christine Dolan, and John Fichter were walking to Fichter's car after an evening class at Georgetown University. As they passed Holy Trinity Church, three men approached them. Two of the men pointed guns at Miller and Fichter and told them to walk up the stairs of the church, saying, "This is a robbery." Miller and Fichter obeyed. The third man tried to force Dolan to ascend the stairs, but she refused—until one of the other men came back down the steps, aimed a gun at her, and ordered her to "move it." When the students were all at the top of the stairs, the robbers instructed them to lie down. Miller and Fichter did so; Dolan squatted. The robbers searched the victims, taking Miller's attache case, Fichter's watch, handkerchief, military I.D. card and cash ($60–65, including a $50 bill), and Dolan's cash. One of the robbers, after searching Miller, unzipped her jeans and "touched [her] in a sexual way."

The robbers fled toward the east, and the students walked to a nearby restaurant and called the police. A few minutes later, Metropolitan Police Officers Wallace Terry and Steven Jackson saw appellants running across "N" Street, about a block southeast of Holy Trinity Church.[1] They called to appellants to stop. Watts and Bennett did so; appellant Jackson, who was carrying Miller's attache case in his arms, continued running until he reached a parked car, then dropped a pistol behind the car.[2] The officers arrested and detained appellants.

The police picked up the students at the restaurant and took them to view appellants. Miller did not think she could identify the robbers and therefore did not participate in the showup. While Miller waited in the cruiser, Dolan and Fichter got out of the car one at a time, and each appellant was brought forward separately, into the area under a nearby street light. Appellants' hands were cuffed behind their backs. Fichter identified Watts and Jackson as two of the robbers. Dolan identified all three appellants.

After the showup, police searched the area between the church and the spot where appellants were arrested. The officers found a second pistol near the curb in the street and recovered Fichter's military I.D. and handkerchief from the top of the church steps.[3]

Appellants were transported to the police station and searched. In Watts' trouser pocket, police found $65 in the denominations taken from Fichter. Watts claimed the money was his but did not know how much was there, or in what denominations. Police also recovered Fichter's watch from the floor of the car in which Bennett had ridden (alone) to the station. Bennett told police that he had found the watch.

Miller and Fichter attended a lineup eight days after the robbery, on March 28,

---

**1.** The officers were responding to a radio report of disorderly conduct in the area of Holy Trinity Church; a neighbor had called the police when he noticed three strangers loitering on the steps of the church at about 9:30 or 10:00 P.M.

**2.** Fichter identified this pistol at trial as one of those used in the robbery.

**3.** Both the guns found by the police were test-fired and found operable. None of the appellants had a license to carry a pistol in the District of Columbia.

1979. They both identified Watts.[4] At trial, Miller identified Watts, Fichter identified Watts and Jackson, and Dolan identified all three appellants.[5] Miller's and Dolan's testimony established that Watts was the robber who held a gun on Fichter and that Jackson was the robber who held a gun on Miller, helped Bennett force Dolan to mount the stairs, and later touched Miller sexually.

None of the appellants took the stand or presented any defense evidence. At the close of the government's case, appellants moved for a judgment of acquittal; their motions were denied. The jury convicted all three appellants of two counts of armed robbery,[6] and convicted Watts and Jackson of carrying a pistol without a license. The court sentenced all appellants to concurrent terms of ten to thirty years on each armed robbery count, and sentenced Watts and Jackson to concurrent one-year terms for carrying a pistol without a license.

## II.

Appellants Watts and Jackson argue that the trial court erred in denying their motion for a mistrial. Appellants had based the motion primarily on their assertion that, during a recess, some of the jurors had noticed marshals escorting appellants out the back door of the courtroom. Appellants claimed this was the second time their in-custody status had been brought to the jurors' attention, referring to a pretrial incident in which a panel of prospective jurors had entered the courtroom before Watts and Jackson were present, had been taken into the hall for a few moments, and then had returned to the courtroom to find Watts and Jackson seated there. Appellants claim that their legal presumption of innocence accordingly was lost because the jurors must have deduced from these two incidents that appellants, pending trial, were being held in the cellblock behind the courtroom and thus did not appear innocent.

■ Although appellants were entitled to "the physical indicia of innocence" at trial, *United States v. Robinson,* 645 F.2d 616, 617 (8th Cir.) (per curiam), *cert. denied,* 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 182 (1981), they bear the burden of showing that they suffered prejudice because some jurors saw them in custody. *Dupont v. Hall,* 555 F.2d 15, 17 (1st Cir. 1977); *see Carr v. United States,* 647 F.2d 867, 868 (8th Cir.) (per curiam), *cert. denied,* 454 U.S. 855, 102 S.Ct. 303, 70 L.Ed.2d 149 (1981); *Wright v. Texas,* 533 F.2d 185, 187 (5th Cir. 1976). Appellants have not met that burden.

■ Even if we assume that jurors actually saw marshals escorting appellants,[7] there is no showing that this prejudiced the jurors against appellants. In the first place, the record does not support a presumption of prejudice. *See Dorman v. United States,* 140 U.S.App.D.C. 313, 326, 435 F.2d 385, 398 (1970) (en banc) (prejudice created by marshals' presence behind defendants in courtroom depends on facts concerning court procedure and jury perceptions; no prejudice presumed from marshals' presence after one day of trial); *Robinson, supra* at 617–18 (jurors' sight of marshal putting defendant in car does not justify presumption of prejudice); *but cf. Estelle v. Williams,* 425 U.S. 501, 512, 96 S.Ct. 1691, 1696, 48 L.Ed.2d 126 (1976) (prejudice is presumed if state compels defendant to stand trial in prison garb). As the trial

---

**4.** Fichter made a misidentification at this lineup as to a second robber. Fichter attended another lineup on April 17, 1979, at which he failed to pick out Jackson and misidentified another person.

**5.** Miller, Fichter, and Dolan also identified the clothing worn by appellants at the time of their arrest as that worn by the robbers.

**6.** Each appellant was acquitted of the third count of armed robbery (of Christine Dolan).

**7.** *But compare Wright v. Texas,* 533 F.2d 185, 187 (5th Cir. 1976) ("significant possibility" that jurors saw defendant in handcuffs was insufficient to establish due process violation) *with Wilson v. United States,* D.C.App., 380 A.2d 1001, 1002 (1977) (hearing was required where motion for new trial was accompanied by counsel's affidavit stating that several jurors said they had seen the defendant being arrested on another charge).

court pointed out, a more likely assumption is that the jurors already were aware that appellants were in custody.[8]

> With the plethora of court news appearing daily in the press, even the most unsophisticated juror must know that defendants indicted for serious crimes, and often even for minor ones, may have to post bail. They must also know that many defendants lack the resources to accomplish this. Under these circumstances we cannot think that the emotional impact of seeing the defendant in custody is necessarily hostile—it may be quite the reverse. [*Dupont, supra* at 17 (*citing Estelle, supra*, 425 U.S. at 507–08, 96 S.Ct. at 1694–95).]

Appellants, moreover, did not seek an opportunity to establish prejudice by moving for a hearing on the issue. They asked the court to *voir dire* the prospective jurors after the pretrial incident but made no such request with regard to the second, mid-trial incident. Appellants' failure to request a hearing or *voir dire*, or to respond to the court's offer to give a cautionary instruction, indicates that appellants themselves did not view the incident as severely prejudicial. *See Blaine v. United States*, 78 U.S. App.D.C. 64, 65, 136 F.2d 284, 285 (1943) (per curiam); *Carr, supra* at 868; *United States v. Diecidue*, 603 F.2d 535, 549 (5th Cir. 1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980).

In short, whatever indicia of custody the jurors saw, appellants have failed to show prejudice. Thus, the trial court properly denied the motion for a mistrial.

### III.

Appellant Bennett asserts that the prosecutor's rebuttal argument contained a comment on his failure to testify, and that the trial court accordingly erred in denying his motion for a mistrial. The issue arose because Bennett's trial counsel argued in closing:

> Isn't it possible, ladies and gentleman, if there was a robbery in this case, that the robbers threw some stuff away, like this watch, for instance, . . . .

> Is it also possible, when these three gentlemen were in the area, they could have run into some of this property? Even if Mr. Bennett picked up this watch, because he found it on the street, it doesn't mean he committed this robbery. Even if one of the other defendants picked up this briefcase, because he found it on the street, doesn't mean he committed the robbery.

In rebuttal, the prosecutor stated:

> Defense suggests well, maybe the robbers threw this stuff away—this briefcase and this watch, and these defendants just happened to come along and pick it up.

> Ladies and gentlemen, the only testimony we have with respect to that briefcase and how Mr. Jackson came into possession of it is the testimony of Tamara Miller, stating that he took it from her at gunpoint, and Mr. Fichter stating that one of the robbers took that watch from him while a gun was being held on him.

■ The fifth amendment forbids comment by the prosecution on an accused's silence. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). This court, therefore, will find trial court error in denial of a mistrial motion when the prosecutor's language "was manifestly intended or was of such character that the jury would naturally and necessarily take it to be comment on the failure to testify." *Byrd v. United States*, D.C.App., 364 A.2d 1215, 1218 (1976) (citation omitted); *accord Blango v. United States*, D.C. App., 335 A.2d 230, 232 (1975); *Peoples v. United States*, D.C.App., 329 A.2d 446, 450 (1974).

■ The prosecutor's remarks in context support the trial court's denial of a mistrial since the remarks were not manifestly intended to be a comment on the failure to

---

8. One juror knew that appellants were in custody because she recognized one of the "guard[s]" in charge of the "prisoner[s]." This fact came out on *voir dire*, but appellants made no attempt to remove the juror.

testify; nor would the jury naturally and necessarily have taken those remarks as a comment on Bennett's silence, for two reasons. First, when a prosecutor's argument consists, as it did here, of a reference to uncontradicted government evidence, the jury will not necessarily construe it as a comment on the defendant's silence unless the defendant's testimony is the only possible source of contradiction. *Wright v. United States*, D.C.App., 387 A.2d 582, 584–85 (1978); *see Christian v. United States*, D.C.App., 394 A.2d 1, 33 n.86 (1978), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979); *White v. United States*, D.C.App., 248 A.2d 825, 825–26 (1969). Evidence other than appellants' testimony might have been introduced to counter the government's explanation for appellants' possession of the robbery proceeds. Appellants and the complainants were not the only persons in the area;[9] the defense might have called witnesses to testify, for example, that they saw property strewn in the street after the approximate time of the robbery. *Compare id.* at 826 n.2 (reversal based on prosecutor's comment that government's testimony was uncontradicted; government witness and defendant "were the only persons present during the altercation").

■ Second, the prosecutor's comment was a response to defense counsel's speculation that "the robbers threw some stuff away," and it is likely that the jury perceived it as such, rather than as a reference to appellants' silence. *See Byrd, supra* at 1218; *United States v. Harris*, 201 U.S.App. D.C. 15, 17, 627 F.2d 474, 476, *cert. denied*, 449 U.S. 961, 101 S.Ct. 375, 66 L.Ed.2d 229 (1980).

In any event, before the prosecutor's rebuttal, Bennett's trial counsel, in his own closing argument, had pointed out appellants' failure to testify, saying, "There is no burden under the law requiring any of these gentlemen to testify or to do anything at all, except sit there and make the government prove its case," and "[T]here is no way you are allowed to hold it against anybody that they don't testify . . . ."[10]

Under the circumstances, the prosecutor's remarks were permissible under *Griffin, supra*; the trial court did not err in denying Bennett's mistrial motion.[11]

## IV.

Appellant Bennett also contends the trial court erred in admitting testimony that, during the robbery, appellant Jackson touched Tamara Miller "in a sexual way." Miller testified that this occurred; Christine Dolan also testified that when she came up the church steps "Tam's pants were sort of pulled down and unzipped." Dolan said that this was why she refused to lie down; she was afraid that if she did, she would be raped.

Appellants did not object at trial to either Miller's or Dolan's testimony. In fact, Bennett's trial counsel emphasized this testimony in his closing argument:

[Tamara Miller] suggests to you that whoever robbed her touched her sexually. She had that in during the course of her testimony. In a minute, I will explain to you why I think that is particularly significant in this case.

\* \* \* \* \* \*

Let's get back to this alleged sexual touching incident as well.

I asked Ms. Dolan whether she was afraid of getting killed when there is a gun in her face and a gun at her head. No. No. I was afraid of getting raped. Raped. All women are afraid of getting

---

**9.** Fichter testified that people were entering and leaving the restaurant where he, Miller, and Dolan went to call the police, and that there also were people around the nearby university buildings.

**10.** The trial court instructed the jurors that every criminal defendant has the right not to testify and that they must draw no adverse

inference from appellants' exercise of that right.

**11.** Appellant Bennett also claims that the trial court should have granted his motion for a mistrial because the prosecution "ridicul[ed]" defense arguments. This contention has no merit.

raped. And I was afraid of getting raped on the steps of my parish church here.

Was there any testimony from anyone in this trial about anybody attempting to rape anybody? No. Not one word. Not one iota. Any threat of rape? No. They said this is an armed robbery. This is a robbery. But that is what Ms. Dolan is concerned about.

I submit to you that she viewed these three men as potential rapists that she wants off the street. That is a motive. That is a motive for her to come in here and testify the way she did.

■ We note, first, that since Bennett raised no objection at trial to the challenged evidence—indeed, he capitalized on it—we must apply the "plain error" standard of review. Under that standard, an error not objected to at trial is unreachable on review unless it is "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States,* D.C.App., 362 A.2d 706, 709 (1976) (en banc) (citation omitted).

■ Evidence that a defendant has committed other crimes or bad acts is "inadmissible to prove a *disposition* to commit crime, from which the jury might infer that the defendant committed the crime charged." *Drew v. United States,* 118 U.S. App.D.C. 11, 15, 331 F.2d 85, 89 (1964) (emphasis in original) (footnote omitted). "Other crimes" evidence is admissible, however, "when relevant to explain the immediate circumstances surrounding the offense charged and when its probative value outweighs its prejudicial effect." *Green v. United States,* D.C.App., 440 A.2d 1005, 1007 (1982) (citation omitted); *accord, Tabron v. United States,* D.C.App., 410 A.2d 209, 214 (1979); *Day v. United States,* D.C. App., 360 A.2d 483, 485 (1976); *Wooten v.*

*United States,* D.C.App., 285 A.2d 308, 309 (1971) (per curiam). The government argues that because appellant Jackson touched Miller sexually during the course of the robbery, Miller's and Dolan's testimony to that effect was not "other crimes" evidence. Even if we assume, to the contrary, that it was, we conclude that this testimony was admissible to explain the circumstances surrounding the robbery, and that on this record the probative value outweighed any possible prejudice. *See Green, supra* at 1007; *Tabron, supra* at 214.

Furthermore, although the general rule is that when other crimes evidence is admissible the court must instruct the jury as to the limited purpose for which the evidence is introduced, *Green, supra* at 1007–08; *see Day, supra,* at 484; *Wooten, supra* at 310, the court's failure to give such an instruction *sua sponte* did not amount to plain error. Given the strong evidence against appellant Bennett—including Dolan's unequivocal identification, the victims' identification of his clothing, his arrest near the robbery scene in the company of Watts and Jackson, and the recovery of Fichter's watch from the squad car in which Bennett alone was a passenger—we can be assured the testimony that one of his codefendants touched one of the victims sexually did not substantially sway the verdict.[12] *See Green, supra* at 1007–08 (court's failure to give *sua sponte* cautionary instruction was not plain error); *Miles v. United States,* D.C.App., 374 A.2d 278, 283–84 (1977) (court's failure to give *sua sponte* cautionary instruction was not plain error where "defense counsel made a conscious tactical decision to air fully the evidence").

■ In sum, the trial court committed no reversible error in any alleged respect.[13]

*Affirmed.*

---

**12.** The jury did not convict Bennett and his codefendants on all charges; each was acquitted of the third robbery count.

**13.** Appellant Jackson also asserts that the evidence was not sufficient to support his conviction and that the trial court, therefore, erred in denying his motion for a judgment of acquittal. We disagree. The evidence against Jackson

was overwhelming. *See* Part I *supra.* Both Fichter and Dolan identified him at the showup and at trial. Jackson was arrested when police saw him running from the area of the robbery with Watts and Bennett. At that time, he was carrying Miller's attache case in his arms, and he dropped a pistol (which Fichter identified as one used in the robbery) when police called to him to stop.