Anthony D. BOYD, Appellant,

v.

UNITED STATES, Appellee.

No. 82–1625.

District of Columbia Court of Appeals.

Argued Jan. 5, 1984.

Decided February 15, 1984.

Randolph N. Stone, Public Defender Service, Washington, D.C., with whom A. Franklin Burgess, Jr., Public Defender Service, Washington, D.C., at the time the brief was filed, James Klein, Public Defender Service, Holly R. Skolnick, Public Defender Service, Washington, D.C., at the time the brief was filed, and Johannes Williams, Public Defender Service, Washington, D.C., were on the briefs, for appellant. Judith Mroczka, Public Defender Service, Washington, D.C., also entered an appearance for appellant.

Regina C. McGranery, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrell, and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER, PRYOR and BELSON, Associate Judges.

PRYOR, Associate Judge:

Appellant Anthony D. Boyd was convicted by a jury of armed robbery, D.C.Code §§ 22–2901, –3202 (1981); kidnapping while armed, *id.* §§ 22–2101, –3202, and armed rape, *id.* §§ 22–2801, –3202. His principal contentions on appeal are that there was insufficient evidence to support either the rape or "while armed" convictions, and that the prosecutor improperly commented to the jury about his refusal to take the stand in his own defense. We find appellant's arguments unpersuasive and therefore affirm his convictions.

## I

The government based its case primarily on the testimony of the complaining witness. She testified that on a winter night she was at home watching television with her mother and two sisters. At about 10:00 p.m., she left the house to shop at a nearby convenience store. She purchased several items, including cookies and Kool cigarettes, and began walking back towards her home. As she approached the house, she observed two men dart across the street and stop under a street light directly in front of her house. The area was well lighted. One man appeared to be tying his shoelace. Complainant did not know the men by name, but she had seen them previously in her neighborhood.

Complainant walked by the men, on the way to her house, but one of them (later identified as appellant) grabbed her, put a knife to her throat, and asked for money. The other man took money from her pocket, and her small bag of groceries. While still holding the knife to her throat, appellant and his companion forced complainant to walk over to an adjacent house and sit on the front steps for twenty or twenty-five minutes.[1] Throughout this time, appellant held the knife to her throat and warned that he would stab and kill her if she screamed. Although complainant was near her own home, she did not cry out. ·

After some time, appellant required complainant to stand and forced her, at knifepoint, to walk into a darkened alleyway in the vicinity. They walked very slowly in the alley for an extended period of time. Complainant stared "straight ahead" during this time, but at one point tried to move away. Appellant put the knife closer to her throat and once again threatened her. They stopped at a "dark corner" in a yard near the alley.

Still with the knife to her throat, complainant was ordered to remove her coat, which was placed on the ground. Appellant

---

1. Complainant was not wearing a watch during the incident, so her statements as to times could only be estimates.

then told her to remove her clothing below the waist, and she complied. According to complainant's testimony, appellant then removed his own coat and pants and, still holding the knife, had intercourse with her for about fifteen minutes. He held the knife even when, at his companion's request, appellant reached behind and tossed a pack of cigarettes to his friend, who sat eating cookies nearby. Complainant closed her eyes and prayed during most of this time.

Later appellant ordered complainant to put her clothes on. Although the witness did as she was told, appellant punched her in the face and kicked her several times in the chest when she attempted to stand. After the men departed, complainant went to a nearby house and reported that she had been raped.[2] Police officers later discovered an abandoned pack of Kools at the scene; a fingerprint lifted from the pack matched appellant's fingerprint.

Approximately one month after the incident, complainant saw appellant at a neighborhood store. Appellant looked at her but continued shopping. Recognizing her assailant, complainant called police, who arrested appellant after complainant identified him.[3]

Appellant did not testify at his trial. The defense theory of the case was that although appellant did encounter the complainant on the night in question, no sexual intercourse occurred between them. In his opening statement, counsel proffered that complainant was acquainted with appellant and had voluntarily accompanied him into the alley in order to smoke marijuana. It was stated that a quarrel had erupted in the alley and that complainant had later levied unfounded charges of rape.

## II

Appellant first contends that there was insufficient evidence to convict him of rape, or alternatively, that there was insufficient evidence to sustain the "while armed" counts of the indictment. We cannot agree.

## A.

At the core of appellant's argument is complainant's admission that, throughout the entire incident, she never saw the knife allegedly held to her throat. No knife was introduced at trial, and complainant was unable to describe it to the jury. There were no scratches or marks on complainant's neck when she was examined shortly after the incident. Complainant never expressly stated during trial that she "felt" a knife pressed to her throat. Given these circumstances, appellant contends that complainant's fear—her reason for yielding to her assailant's advances—stemmed solely from her assumption that the man had a knife. Since complainant's testimony did not reveal a rational basis for her assumption (*i.e.*, she did not see or feel a knife), it is urged that the government failed to prove beyond a reasonable doubt that complainant "had at [the time of sexual intercourse] a reasonable belief induced by threats that [she] faced death or serious bodily harm." *Arnold v. United States,* 358 A.2d 335, 340 (D.C.App.1976) (en banc).

Appellant's argument fails because it presumes that complainant's fear during her assault was unreasonable simply because she did not see a knife, or testify expressly that she "felt" one pressed to her throat. This ignores common experience. In order to prove lack of consent, the government need not establish that the victim submitted to sexual intercourse solely because the accused had a weapon. It is enough that the victim's resistance was overcome through the use of physical force and threats, such that she reasonably believed that she would be harmed if she did not submit. *Smith v.*

2. The woman who lived at the house testified that she wiped blood from a cut on complainant's face and telephoned police. Complainant's sisters testified that upon her return, complainant appeared disheveled and her eye was swollen.

3. Appellant's companion was never identified or apprehended.

United States, 363 A.2d 667, 669 (D.C.App. 1976). In this case, the victim testified that appellant grabbed her around the neck from behind, held what she thought was a knife to her throat, and threatened to kill her if she did not accompany him. Viewing this testimony in its most favorable light, we think that complainant was justified in reasonably believing that she would suffer serious injury or death if she resisted.

*Farrar v. United States*, 107 U.S.App.D.C. 204, 275 F.2d 868 (1960), is not to the contrary. In that case, the complainant testified that a stranger accosted her on the street and forced her into his apartment by pressing a knife against her and threatening to kill her. The area was well lighted, but complainant never saw a knife. *Id.* at 205, 275 F.2d at 869. In appellant's apartment, complainant had sexual intercourse with him, "[b]ut she did not testify that her taking part in intercourse was induced by ... threats, or by words of any sort." *Id.* at 204, 275 F.2d at 868. The complainant in that case did not see the knife allegedly held to her neck during the intercourse, even though she did not close her eyes, looked directly at her attacker, and there was adequate light. *Id.* at 205, 275 F.2d at 869. The majority concluded that

> It is nearly or quite incredible that appellant could have used a knife as extensively as the girl said he did without her ever seeing it. It is so nearly incredible that a reasonable inference, if not the only reasonable inference, from the testimony of the girl herself, is that appellant did *not* use a knife. And there is no evidence that her participation in intercourse was induced by any other kind of force or threat.

*Id.* (emphasis in original). The court reversed appellant's rape conviction concluding that the complainant's testimony lacked the inherent credibility necessary to sustain a conviction. *See Konvalinka v. United States,* 162 A.2d 778, 782 (D.C.Mun.App. 1960), *aff'd,* 109 U.S.App.D.C. 307, 308, 287 F.2d 346, 347 (1961); *Johnson v. United States,* 138 U.S.App.D.C. 174, 177, 426 F.2d 651, 654 (1970), *cert. dismissed as improvidently granted,* 401 U.S. 846, 91 S.Ct. 1258, 28 L.Ed.2d 523 (1971); *see also United States v. Green,* 139 U.S.App.D.C. 75, 79 n. 12, 429 F.2d 754, 758 n. 12 (1970).

Comparing *Farrar* to the present case, appellant argues that "[i]t is wholly implausible that during [the incident], the knife was held in such a position [that complainant] could not get a glimpse of it." We disagree. In the case at bar, complainant was with appellant in a well-lighted area for a relatively short period of time. After her money and groceries were taken, complainant was taken to the front steps of an abandoned house, and then into a darkened yard, where she was assaulted. She testified that she looked "straight ahead," and that appellant held her from behind. She closed her eyes during much of the rape. This testimony was sufficiently credible for the jury to find beyond a reasonable doubt that she did not consent freely to appellant's advances.

### B.

Appellant further contends that a judgment of acquittal should have been granted on the "while armed" charges, because complainant never "stated the basis for her conclusion that there was a knife." Appellant's argument, which we reject, is that because complainant did not expressly testify that she either saw or felt a knife pressed to her throat, her testimony was necessarily insufficient to sustain convictions under D.C.Code § 22–3202 (1981).

The indictment charged that appellant had committed robbery, kidnapping, and rape "while armed with a dangerous weapon, that is, a knife." To sustain convictions on the "while armed" counts, the government had to prove that the underlying felonies were "committed by one armed with a dangerous or deadly weapon." *Meredith v. United States,* 343 A.2d 317, 320 (D.C.App.1975).

Our conclusion that there was sufficient credible evidence to send the "while armed" counts to the jury springs from our appreci-

ation of the trial court's and jury's respective responsibilities at trial. In ruling on the motion for judgment of acquittal, the trial judge must adhere to this often-stated rule:

> If he concludes that upon the evidence there must be [a reasonable] doubt in a reasonable mind [as to the accused's guilt], he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter.

*Curley v. United States,* 81 U.S.App.D.C. 389, 392–93, 160 F.2d 229, 232–33, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947); *accord Franey v. United States,* 382 A.2d 1019, 1022 & n. 6 (D.C.App. 1978). Either direct or circumstantial evidence may be relied upon to weather the motion for judgment of acquittal. *Byrd v. United States,* 388 A.2d 1225, 1229 (D.C. App.1978) (citing additional cases); *United States v. Fench,* 152 U.S.App.D.C. 325, 333, 470 F.2d 1234, 1242 (1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973). Reasonable inferences must be drawn in favor of the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Hubbard,* 429 A.2d 1334, 1337 (D.C.App.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981); *Calhoun v. United States,* 369 A.2d 605, 607 (D.C.App.1977). The trial court must not usurp the jury's prerogative of determining credibility, weighing the evidence, and drawing reasonable inferences of fact. *Singletary v. United States,* 383 A.2d 1064, 1069 n. 4 (D.C. App.1978).

No direct evidence was introduced in this case to establish that appellant was in fact armed with a dangerous weapon during the incident. Yet complainant insisted that appellant had a knife. Her testimony is replete with circumstantial statements that appellant "put a knife to my throat," "kept the knife at my throat," or that he "still had the knife at my throat." She described how appellant reached around her from behind and threatened to stab her, and how she looked away from where the knife would have been at her neck because she was afraid. At one point, the prosecutor asked complainant to show the jury how the knife was held:

Q. How was [the knife] held when you say it was about your throat?

A. With the point right to this part of my throat.

The Court: Indicating the middle part of the throat.

[Complainant]: Yes.

Complainant testified that appellant "put," "kept," or "had" a knife to her throat but did not state that she "felt" one there. The trial court and jury had the benefit of seeing the witness testify, and we will not disturb their judgment that she perceived a knife. Her demonstration to the jury, not objected to by defense counsel, must also be highlighted. The record does not make it entirely clear what complainant illustrated in court, but we are compelled to indulge inferences in favor of the government. *See United States v. Skinner,* 138 U.S.App.D.C. 121, 124, 425 F.2d 552, 555 (1970). During oral argument, appellant's counsel conceded that the jury could have reasonably inferred the presence of a weapon after watching the demonstration. In sum, complainant testified that appellant was armed with a knife; the trial court credited her testimony, as did the jury. This satisfies us in a case such as this, where credibility was the handmaiden of sufficiency. *See United States v. Stevenson,* 143 U.S.App.D.C. 246, 248, 443 F.2d 661, 663 (1971) (per curiam).

## III

Appellant claims that comments made by the prosecutor during closing and rebuttal arguments improperly underscored his failure to testify. During closing argument, the prosecutor had stated:

The defense came out in their opening statement and just didn't tell you [complainant] is a liar. They told you a story which they weaved together. They told you something about [complainant] sitting next door for a while with [appellant], that they conversed and then they walked together because [complainant] wanted to go to a secluded spot, so they walked through alleys and they entered into somebody's yard and then there was some talk about they were smoking [marijuana] together. And all of a sudden [appellant] got angry and punched her, and she went and cried rape.

Where is the defense evidence as far as that theory is concerned?

\* \* \* \* \* \*

Where is the evidence that [complainant] knew [appellant]? ... Where is any evidence that [complainant] voluntarily left the front steps of the house next door to her, walked through several alleys ... because she wanted some privacy with [appellant]?

Where is there any evidence that she voluntarily went there? That's speculation. That is a statement by the defense counsel. That is not supported by the evidence. And you are going to be instructed that statements of counsel are not evidence.

Appellant requested a mistrial, based upon his contention that the prosecutor's "where is the evidence" refrain necessarily highlighted appellant's failure to testify. The court denied his motion, and we think this was not error.

Implicit in the Fifth Amendment right to remain silent is that the prosecutor may not comment to the jury upon the defendant's exercise of that right. *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965); *Watts v. United States,* 449 A.2d 308, 312 (D.C.App.1982); *United States v. Harris,* 201 U.S.App.D.C. 15, 17, 627 F.2d 474, 476, *cert. denied,* 449 U.S. 961,

101 S.Ct. 375, 66 L.Ed.2d 229 (1980). Both direct comment and innuendo fall outside of constitutional boundaries; any statement which " 'was manifestly intended or was of such character that the jury would naturally and necessarily take it to be comment on the failure to testify' " is improper. *Watts, supra,* 449 A.2d at 312 (quoting *Byrd v. United States,* 364 A.2d 1215, 1218 (D.C. App.1976)); *Wright v. United States,* 387 A.2d 582, 584 (D.C.App.1978); *Blango v. United States,* 335 A.2d 230, 232 (D.C.App. 1975).

■ A defendant's invocation of the Fifth Amendment privilege does not prevent the prosecutor from emphasizing to the jury that the government's evidence stands uncontradicted. For there to be reversible error, it must be established that no one other than the defendant (who chose to remain silent) could have contradicted the government's evidence. *Watts, supra,* 449 A.2d at 313; *Wright, supra,* 387 A.2d at 584; *accord Christian v. United States,* 394 A.2d 1, 33 n. 86 (D.C.App.1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). It is only in this situation that the prosecutor's comment would "naturally and necessarily" lead the jury to focus upon the defendant's silence.

■ In this case, the prosecutor noted the dearth of evidence supporting three facts which defense counsel had earlier asserted:[4] (1) complainant was acquainted with appellant; (2) complainant accompanied appellant voluntarily to the crime scene; and (3) complainant and appellant smoked marijuana together. As to the first and third points, the prosecutor's query "where is the evidence" was not error simply because the jury could have reasonably expected someone other than appellant to testify on the matter. Defense counsel had mentioned to the jury that complainant and appellant attended school together. Fellow students or complainant's sister (who had also at-

4. Appellant does not contend that the prosecutor's characterization of his opening statement was incorrect or misleading.

tended the school) could have testified that the complainant and appellant were acquaintances. As to the smoking of marijuana, appellant again was not the only one who could have established this. Police officers who searched the scene or eyewitnesses could have testified that cigarette papers or drugs were found on the scene. There was no finding that these two references were intended to, or did necessarily, emphasize appellant's silence.[5]

■ We hold that the prosecutor's second comment, that no evidence supported defense counsel's speculation that complainant had accompanied appellant voluntarily, constituted a permissible illustration to the jury that statements of counsel are not evidence. We have permitted similar comments by prosecutors, made in response to defense counsel's opening the door by offering reasonable (albeit unproven) theories contrary to government hypotheses. *See Watts, supra,* 449 A.2d at 313; *Christian, supra,* 394 A.2d at 33 n. 86; *see also Harris, supra,* 201 U.S.App.D.C. at 17, 627 F.2d at 476; *United States v. Pimentel,* 654 F.2d 538, 543 (9th Cir.1981); *cf. Byrd, supra,* 364 A.2d at 1218 (prosecutor responding to defense counsel's hypothetical); *cf. also Medina v. United States,* 315 A.2d 169, 170 (D.C. App.1974) (attack on complainant's credibility during defense counsel's closing permits prosecutor to "set the record straight" during rebuttal). When no such alternative theory is offered by defense counsel, it is of course impermissible for the prosecutor to comment on the absence of contrary evidence which only the defendant's testimony could have produced. *White v. United States,* 248 A.2d 825, 826 (D.C.App.1969).

■ Although *Watts, supra,* and *Christian, supra,* concerned prosecutorial comments made during rebuttal in response to defense counsel's closing argument, we see no reason to fashion a different standard for permissible responses during closing argument to defense counsel's opening statement. *See United States v. Prichard,* 645 F.2d 854, 858 (10th Cir.1981) ("When defense counsel, by way of opening statement, advises a jury of what his evidence will be, he invites comment by the prosecutor in closing argument that defense counsel failed to prove that which he said he would."), *cert. denied,* 454 U.S. 832, 102 S.Ct. 130, 70 L.Ed.2d 110 (1981); *United States v. Broadhead,* 413 F.2d 1351, 1363 (7th Cir.1969) ("defense counsel's opening statement was an invitation to the prosecution to comment on the defense theory"), *cert. denied,* 396 U.S. 1017, 90 S.Ct. 581, 24 L.Ed.2d 508 (1970). This rule recognizes the interest in helping the jury to understand the difference between evidence and arguments of counsel.[6]

■ Appellant raises no other significant claims.[7]

*Affirmed.*

---

5. Similarly, the prosecutor's comment during rebuttal was not error. The prosecutor stated to the jury that

   When you evaluate all of [the evidence and not the statements of counsel] you will find there is no credible reasonable evidence that contradicts [complainant's] story.

   This comment merely indicated that no evidence, whether physical or testimonial, tended to undercut complainant's story in any way. Contrary physical or testimonial evidence could have come from any number of sources: police, doctors, witnesses, etc., and not solely from appellant.

6. The prosecutor's argument was adequately put in perspective by defense counsel's, prosecutor's and the trial court's statements to the jury regarding the government's burden of proof, *see Williams v. United States,* 379 A.2d

698, 700 (D.C.App.1977), and the trial court's detailed instruction to the jury regarding appellant's failure to testify. *See Blango, supra,* 335 A.2d at 233; *Broadhead, supra,* 413 F.2d at 1363 n. 14.

7. Appellant's contention that the trial court should have granted a motion for judgment of acquittal on the kidnapping count, because the asportation was in essence an integral part of the rape, is without merit. Complainant was initially accosted on a well-lighted street in front of her home. She was taken over 200 yards to a darkened secluded spot, and spent approximately one hour with appellant. We do not think the asportation was an integral part of the rape—clearly it alone could have supported a kidnapping conviction. *See Robinson v. United States,* 388 A.2d 1210, 1211 (D.C.App.

1978). The asportation also "substantially increased the risk of harm over and above that necessarily present in the underlying crime." *Id.* at 1212; *see also Beck v. United States,* 402 A.2d 418, 422–23 (D.C.App.1979); *Sinclair v.* *United States,* 388 A.2d 1201, 1207–08 (D.C. App.1978), *cert. denied,* 439 U.S. 1118, 99 S.Ct. 1026, 59 L.Ed.2d 77 (1979); *United States v. Wolford,* 144 U.S.App.D.C. 1, 8, 444 F.2d 876, 883 (1971).