**Joseph H. TILLMAN, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 84–124.**

District of Columbia Court of Appeals.

Argued Dec. 14, 1984.

Decided Feb. 6, 1985.

Joan Gauche, Washington, D.C., appointed by this court, for appellant.

Bradley L. Kelly, Asst. U.S. Atty., Washington, D.C. with whom Joseph E. di Genova, U.S. Atty., and Michael W. Farrell and Ronald Dixon, Asst. U.S. Attys., Washington, D.C. were on brief, for appellee.

Before PRYOR, Chief Judge, and BELSON and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellant was charged by indictment with carrying a pistol without a license,[1] alteration of identifying marks on a pistol,[2] unlawful possession of ammunition,[3] and possession of a prohibited weapon (a blackjack).[4] At the close of the government's case, the trial court entered a judgment of acquittal with respect to the second charge. The jury subsequently found appellant guilty on the remaining charges, and he was sentenced to a prison term as a repeat offender. We affirm the conviction.

I

Late one night in December 1982, shortly after midnight, Metropolitan Police Officer James Hassen saw a Thunderbird with temporary District of Columbia license tags headed north on Twelfth Street, N.W., near Pennsylvania Avenue. The dates on the tags indicated that they were valid for ninety days. Knowing that the District did not issue such tags,[5] Officer Hassen turned on the flashing red lights of his scout car and fell in behind the Thunderbird. When

1. D.C.Code § 22–3204 (1981).

2. D.C.Code § 22–3212 (1981).

3. D.C.Code § 6–2361 (1981).

4. D.C.Code § 22–3214(a) (1981).

5. Temporary license tags are valid for a maximum of twenty days. 18 DCMR § 505.4 (1981).

the driver of the Thunderbird began to speed up, Officer Hassen turned on his siren, and a chase ensued well in excess of the speed limit.

At Tenth and P Streets, N.W., the Thunderbird began to slow down, and the driver jumped out and fled. Seconds later the Thunderbird collided with a parked car, pinning the right-hand door shut. Appellant, who had been riding in the front passenger seat, had just slid across the front seat and was trying to get out on the driver's side when Officer Hassen arrived. After broadcasting a lookout for the fleeing driver, Hassen went to help appellant out of the car. As he did so, he saw a pistol on the floor on the passenger side, where appellant had originally been sitting. He seized the pistol, found that it contained six live rounds of .22 caliber ammunition, and placed appellant under arrest. A further search of the car revealed a blackjack under the front passenger seat.

A few moments later Officer James Zerega arrived to take appellant to the police station. Before putting him in the wagon, Zerega handcuffed him and gave him a quick pat-down for weapons, but found nothing. At the station Officer Zerega conducted a more thorough search of appellant's clothing and found seven more rounds of .22 caliber ammunition in appellant's shirt pocket.

The police were unable to ascertain the registered owner of the pistol because its serial number had been filed off. Documentary evidence established, however, that appellant had no license to carry a pistol and that he was not the registered owner of any firearm. An expert witness testified that he could not determine who filed the serial number off the pistol.

At the close of the government's case, defense counsel moved for a judgment of acquittal. With respect to the charge of altering the identifying marks on the pistol, the government acknowledged that it was relying on the inference contained in D.C.

Code § 22–3212 (1981), which provides in pertinent part:

> Possession of any pistol ... upon which any such mark shall have been changed, altered, removed, or obliterated shall be prima facie evidence that the possessor has changed, altered, removed, or obliterated the same within the District of Columbia....

Both the prosecutor and defense counsel[6] were unaware that more than three months before appellant's trial began, this statutory inference had been held unconstitutional in *Reid v. United States*, 466 A.2d 433 (D.C.1983). The trial judge recalled the *Reid* case, however, and after rereading it during a luncheon recess, he granted the motion for judgment of acquittal as to this one count.

Appellant did not testify and presented no evidence in his own defense. His counsel, however, intimated in his closing argument that the police might have planted the seven rounds of ammunition in appellant's pocket:

> Another thing that doesn't make sense in the Government's case, the police arrest someone for a weapon. He is supposed to be armed and dangerous. And what do they do? According to the Officer, well we just pat down the outside of his clothing. Put yourselves in the Officer's shoes. 12:30 at night. An individual arrested for carrying a pistol without a license. You are going to deal with that individual. Do you pat him down, light pat down to see perhaps if he has something else?
>
> It is the defense position in this case that Mr. Tillman was searched at that point and based on all the evidence we heard, no ammunition was found in his pocket at that time. Only after it is down at the station that somehow those bullets come into play.
>
> We contend, ladies and gentlemen, that is not credible.

In rebuttal, the prosecutor said:

> But what you also have is the bullets in his pocket.

6. Appellant is represented by different counsel on appeal.

Now, Mr. Sandler [defense counsel] wants you to draw some inference or reach some conclusion about that. Did you hear any evidence at all, aside from his voice, that leads you to believe that the police somehow put those bullets in this man's pocket? Did you hear anything like that, other than what Mr. Sandler is trying to get you to believe?

Defense counsel did not object to these comments.

## II

The Supreme Court held in *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), that the Self-Incrimination Clause of the Fifth Amendment prohibits a prosecutor from commenting to the jury on the defendant's failure to testify in his own defense at trial. In determining whether any given comment is improper, this court has repeatedly held that the relevant inquiry is "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be comment on the failure to testify." *Byrd v. United States,* 364 A.2d 1215, 1218 (D.C.1976) (citations omitted). There is nothing in the record to suggest that the prosecutor's remarks in this case were "manifestly intended" as a comment on appellant's silence. Thus the only issue for us to decide is whether a reasonable jury would "naturally and necessarily" construe it as such. We hold that such an interpretation is neither natural nor necessary.

■ The prosecutor's statement was plainly aimed at defense counsel's unsubstantiated theory that the police had somehow planted seven live rounds of ammunition in appellant's pocket. The statement focused on defense counsel and his closing argument, not on appellant's failure to take the stand:

7. *Byrd v. United States, supra,* 364 A.2d at 1218.

8. In *Boyd,* a rape and kidnapping case, defense counsel had told the jury in his opening statement that the complainant was acquainted with the defendant and had voluntarily accompanied

Now *Mr. Sandler* wants you to draw some inference or reach some conclusion about [the bullets in appellant's pocket]. Did you hear any evidence at all, *aside from his voice,* that leads you to believe that the police somehow put those bullets in this man's pocket? Did you hear anything like that, other than what *Mr. Sandler* is trying to get you to believe? [Emphasis added.]

After defense counsel insinuated that the police had planted the ammunition on appellant, the prosecutor acted properly by pointing out in rebuttal that counsel's theory was not supported by any evidence. *See, e.g., Christian v. United States,* 394 A.2d 1, 33 n. 86 (D.C.1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979); *Byrd v. United States, supra,* 364 A.2d at 1218. Indeed, defense counsel was arguing facts contrary to the evidence, and the prosecutor had a right to point this out to the jury. The prosecutor's remarks were carefully worded to meet the specific argument advanced by defense counsel. They did not exceed permissible limits and did not amount to a comment on appellant's failure to testify.

In *Watts v. United States,* 449 A.2d 308 (D.C.1982), on a similar record, we rejected a *Griffin*-based argument that the prosecutor had commented on the defendant's failure to testify, holding that "the prosecutor's comment was a response to defense counsel's speculation ... and it is likely that the jury perceived it as such, rather than as a reference to appellants' silence." *Id.* at 313 (citations omitted). By the same reasoning, we reject appellant's argument here. There is no rational way in which a jury could "naturally and necessarily"[7] interpret the prosecutor's remarks as a comment on appellant's failure to take the stand in his own defense. *See also Boyd v. United States,* 473 A.2d 828, 832–834 (D.C. 1984).[8]

him to the scene of the crime, and that the two of them had smoked marijuana together. There was no evidence at trial to support any of these assertions. In his closing argument the prosecutor said to the jury:

## III

■ Appellant was acquitted on the charge of altering the identifying marks on a pistol when the trial court ruled that the government had not presented sufficient evidence in support of the second count of the indictment, which contained that charge, to go to the jury. He now argues that the mere presence of this count in the indictment, when the government knew or should have known it did not have enough evidence to obtain a conviction, entitles him to reversal on the other three counts as well. We are not persuaded.

This issue arises because neither the prosecutor nor defense counsel below was aware of our decision in *Reid v. United States, supra,* even though it had been issued more than three months before appellant's trial.[9] We find counsel's ignorance of *Reid* hard to comprehend, even when viewed in the most charitable light. We could understand their unfamiliarity with the decision if it had been handed down a few days before trial; busy attorneys, after all, sometimes need a little time to get caught up with recent developments in the law. But no attorney should need three months to read a five-page slip opinion. Fortunately, the trial judge remembered the *Reid* case and was able to find the opinion in his chambers and reread it over the luncheon recess. Nevertheless, the prosecutor should have been aware of *Reid* and, knowing what limited evidence he had, should have dismissed the second count before trial; failing that, defense counsel should have moved to dismiss it.

Despite these lapses, however, we are convinced that appellant was not prejudiced by the presence of the second count in the indictment. The evidence on that count was minimal; it merely established that the serial number on the pistol had been filed off sometime before the pistol was seized. We do not see how this could have influenced the jury's verdict on the three remaining counts, which was supported by separate and distinct evidence. Furthermore, after granting the motion for judgment of acquittal on count two, the court specifically instructed the jury at defense counsel's request:

Now, the trial has progressed to the point where certain charges against the defendant have been disposed of by the Court or one charge has been disposed of by the Court. That charge must be of no further concern to you in your consideration of the remaining charges.

The charge that has been disposed of is the charge of obliterating identifying marks on a firearm. That is no longer of any concern to you. You are instructed to ignore and disregard any and all testimony or other evidence which was introduced with reference only to that charge. And you are further instructed that the disposition of that charge should have no bearing whatsoever on your final resolution of the remaining charges against the defendant.

Given this instruction, which the jury is presumed to have followed, *Smith v. United States,* 315 A.2d 163, 167 (D.C.), *cert. denied,* 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974), we are satisfied that appellant suffered no measurable prejudice.

*Affirmed.*

---

Where is the evidence that [complainant] knew [appellant]? ... Where is any evidence that [complainant] voluntarily left the front steps of the house next door to her, walked through several alleys ... because she wanted some privacy with [appellant]?

Where is there any evidence that she voluntarily went there? That's speculation. That is a statement by the defense counsel. That is not supported by the evidence. And you are going to be instructed that statements of counsel are not evidence.

473 A.2d at 833. We held *inter alia* that these comments "constituted a permissible illustration to the jury that statements of counsel are not evidence." *Id.* at 834.

9. *Reid* was decided on August 31; appellant's trial began on December 5.