**Alfred O. REED, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 02–CF–1426.**

District of Columbia Court of Appeals.

Submitted Feb. 6, 2003.
Decided July 3, 2003.

---

John A. Briley, Jr., appointed by the court, was on the brief for appellant.

Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Mary Patrice Brown, and Brian J. Quarles, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY, SCHWELB, and GLICKMAN, Associate Judges.

TERRY, Associate Judge:

After a jury trial, appellant was convicted of possession of cocaine with intent to distribute it, possession of marijuana, and carrying a dangerous weapon (a knife). On appeal he contends that the evidence was insufficient to support the weapon conviction, that the trial court erred in allowing an expert witness to testify, and that the court should have granted his motion for a mistrial based on allegedly improper comments by the prosecutor during closing argument. We affirm.

I

Two Metropolitan Police officers, while driving on Orange Street, S.E., arrested appellant at about 10:30 p.m. after they discovered him sitting alone in the driver's seat of a parked car with expired tags. Appellant had an open container of cognac in the car, visible from where the officers were standing, and a bag containing marijuana was lying on the console. As he struggled with the officers, appellant told them that he had a dagger, which Officer Dennis Spalding promptly located and removed from appellant's waistband. After the police restrained appellant, they searched him and discovered in the pocket of his jacket forty-two small plastic bags containing crack cocaine, one large chunk of crack cocaine, eight bags of marijuana, and $266 in cash.

Detective Mark Stone testified as an expert witness for the government about the nature of the drug trade. Ten months before trial, the government had notified defense counsel by letter that it was going to call an expert witness. The letter named two possible experts, but stated that the identity of the witness would not be known until shortly before trial because of scheduling uncertainties. Nevertheless, the government summarized the substance of the expert testimony and gave detailed background information for the two named experts. Six months before trial, appellant filed a motion *in limine* to exclude the expert testimony, arguing that such testimony was not necessary to explain the drug trade to the jury.

At trial, when the prosecutor called Detective Stone, defense counsel reminded the court of the pending motion. He also asserted that the prosecutor had not supplied background information about Detective Stone (who was not one of the two potential witnesses named in the earlier letter) and requested a hearing on Stone's qualifications outside the presence of the jury. In response, the prosecutor turned over a copy of Stone's *curriculum vitae,* which he had obtained about a half-hour earlier when he found out who his expert

would be that day. The court denied counsel's motion and the request for a hearing. Voir dire proceeded, and the court accepted the expert as qualified, over defense counsel's general objection.

In his opening statement, defense counsel had said, "You will hear testimony, we expect, that this jacket, in which the proven drugs, they have been analyzed by the DEA Lab and were found belong to an individual by name of Nathaniel Blakeley." At the end of the trial, the prosecutor made the following comments in·his closing argument which related back to defense counsel's opening statement:

And that's the evidence. You have evidence from any other eyewitness who was there? No, you do not have.

\* \* \* \* \*

But we certainly don't have any evidence in this case, although it was promised to you, that you would hear evidence that the drugs belonged to Nathaniel Blakeley. That the defendant went to see Nathaniel Blakeley at that particular location.

\* \* \* \* \*

And did you hear·any reason to doubt Detective Stone on that? Any reason whatsoever? In fact, you heard ... the defense come back after lunch break and say we got nothing really to cross-examine this guy on.

In response to these comments, defense counsel moved for a mistrial, arguing that the prosecutor had impermissibly suggested to the jury that the burden of proof had shifted to the defendant and that police officers were entitled to a higher level of credibility. The court denied the motion, stating, "I didn't think there was any risk that the jury would take that inference."

In addition, the court noted that it would instruct the jury on the presumption of innocence and the burden of proof. A short time later the court included such instructions in its jury charge.

II

Appellant contends that the evidence was insufficient to support his conviction of carrying a dangerous weapon. We disagree.

█ D.C.Code § 22–3204(a) (1996)[1] states in part, "No person shall carry within the District of Columbia either openly or concealed on or about their [*sic*] person ... any deadly or dangerous weapon capable of being so concealed." To obtain a conviction under this statute when the weapon in question is a knife, the government must prove beyond a reasonable doubt (1) that the defendant carried the knife either openly or concealed, (2) that the defendant had the general intent to do the acts constituting the carrying of the knife, and (3) that the purpose of carrying the knife was its use as a dangerous weapon. *Strong v. United States*, 581 A.2d 383, 385–386 (D.C.1990). The government is not required to prove a specific intent to use the knife for an unlawful purpose. *See In re S.P.*, 465 A.2d 823, 826 (D.C.1983); *Leftwitch v. United States*, 251 A.2d 646, 648–649 (D.C.1969). Rather, because a knife may be lawfully used as a tool or for other utilitarian purposes ("all knives are not *per se* dangerous weapons"), the test is "[whether] the purpose of carrying the object, under the circumstances, is its use as a weapon." *Scott v. United States*, 243 A.2d 54, 56 (D.C.1968) (citation omitted). This may be established by proof of the surrounding circumstances, "such as the time and place the defendant was found in possession of [the knife] . . . ." *Id.*

1. Recodified as D.C.Code § 22–4504(a) (2001).

In the instant case, appellant was sitting alone in a car late at night, in a neighborhood known for drug activity, with a substantial quantity of drugs in the pocket of his jacket. The knife he was carrying was described at trial as a three-inch dagger, which the jury could reasonably find had no utilitarian purpose. *See Scott*, 243 A.2d at 56 (jury could find that razor carried by·defendant, absent other explanation, could be a dangerous weapon); *Leftwitch*, 251 A.2d at 646 (large butcher knife carried by defendant as he walked along the street, trying to open several car doors, could be a dangerous weapon). The fact that appellant was in possession of a knife and a large quantity of drugs at the same time is also significant; "as has often been observed, drugs and weapons go together." *Peay v. United States*, 597 A.2d 1318, 1321 (D.C.1991) (en banc) (citations omitted); *see, e.g., Marshall v. United States*, 623 A.2d 551, 555 (D.C.1992); *United States v. Payne*, 256 U.S.App.D.C. 358, 361–362, 805 F.2d 1062, 1065–1066 (1986) (collecting cases). We are satisfied that the jury in this case could reasonably infer from all the evidence, viewed in the light most favorable to the government, that this particular knife was carried as a weapon. We hold accordingly that the evidence was sufficient to permit the jury to find guilt beyond a reasonable doubt on the dangerous weapon charge.

### III

Appellant's second claim of error is that the government's expert witness was improperly qualified by the court. The gist of appellant's argument is that the government did not completely fulfill its requirements under Rule 16 of the Superior Court Criminal Rules and that the court erred by not holding a hearing on the expert's qualifications out of the presence of the jury. We find these contentions unpersuasive. First, the government substantially complied with Rule 16 [2] when it sent defense counsel its discovery letter stating that it was going to present an expert. That letter stated the substance of the expert's testimony and the basis for the opinion that the expert would offer. The only thing lacking until the day of trial was information about the specific qualifications of the expert, who was identified on the day he was needed in court according to a procedure about which the government had previously notified counsel. The court itself noted that most police experts in its experience did not come with a *curriculum vitae*. In this case, however, defense counsel had the expert's *curriculum vitae* in hand before the voir dire of the expert even began. We are satisfied, on this record, that appellant was well-armed for a complete voir dire of the expert's qualifications and for later cross-examination.

Second, no hearing outside the jury's ·presence was required when the court was able to determine the expert's qualifications before he took the stand to testify in front of the jury. *See Johnson v. District of Columbia*, 728 A.2d 70, 74–75 (D.C.1999) ("the court need not hold a factual hearing when an adequate foundation is present in the record of the proceedings or an attorney's offer of proof" (citation omitted)). There was in this case a complete voir dire of the expert, and

---

2. Rule 16(a)(1)(E) states in relevant part:
   At the defendant's request, the government shall disclose to the defendant a written summary of the testimony of any expert witness that the government intends to use during its case-in-chief at trial.... The summary provided under this subparagraph shall describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications.

defense counsel made only a general objection to his qualifications. We hold that the trial court acted well within its discretion when it accepted Detective Stone as an expert and allowed him to give an opinion on matters within his expertise.[3]

## IV

■ Appellant's final contention about allegedly improper statements by the prosecutor is also without merit; indeed, the cases he cites do not support his argument. For example, in *Brewer v. United States*, 559 A.2d 317 (D.C.1989), *cert. denied*, 493 U.S. 1092, 110 S.Ct. 1163, 107 L.Ed.2d 1066 (1990), we held that the prosecutor's comment, "Nobody who took the witness stand can tell you why he did it," was permissible and did not infringe or comment on the defendant's Fifth Amendment right not to testify. *Id.* at 322. Likewise, in *Tillman v. United States*, 487 A.2d 1152 (D.C.1985), after defense counsel had made insinuations in his closing argument about possible police misconduct, we found nothing improper in the prosecutor's "pointing out in rebuttal that counsel's theory was not supported by any evidence." *Id.* at 1154 (citations omitted). A prosecutor's argument that the defense did not prove what defense counsel said in his opening statement that he would prove is also permissible. *Brewer*, 559 A.2d at 323 n. 11 ("the prosecutor was entitled to point out that the defense did not live up to its promises"); *Boyd v. United States*, 473 A.2d 828, 833–834 (D.C.1984) (prosecutor permitted to respond, using "where is the evidence?" arguments, to defense counsel's unproven theories presented in opening statement).

■ The three comments by the prosecutor that appellant challenges were not improper. The first and third are statements of the "no evidence" type, as in *Brewer*, *Tillman*, and *Boyd*, which say only that there is no evidence to discredit or contradict the government's theory of the case—*e.g.*, "[Do] you have evidence from any other eyewitness who was there?" "[D]id you hear any reason to doubt Detective Stone on that? Any reason whatsoever? In fact, you heard ... the defense ... say we got nothing really to cross-examine this guy on." These remarks merely highlighted the fact that there was no evidence from the defense contradicting the government's evidence, which the jury had heard; they did not come close to suggesting that the defense had the burden of proof. *See Allen v. United States*, 603 A.2d 1219, 1224–1225 (D.C.1992) (en banc) (rejecting claim that prosecutor's closing argument which "revealed the lack of evidence presented by the defense" somehow shifted the burden of proof to the defense (citing cases)). As for the second statement by the prosecutor, "But we certainly don't have any evidence in this case, although it was promised to you, that you would hear evidence that the drugs belonged to Nathaniel Blakeley," it merely pointed out that the defense did not prove what counsel said he expected to prove in his opening state-

---

**3.** Appellant also argues that the expert testimony did not meet the standard set forth in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). As the government points out, *Kumho* is not the law in this jurisdiction, which uses the general acceptance standard set forth in *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923). *See Bahura v. S.E.W. Investors*, 754 A.2d 928, 943–944 n. 15 (D.C.2000). Likewise, appellant's assertion that street drug activity is within the ken of a jury is contrary to our established case law. *See, e.g., Hinnant v. United States*, 520 A.2d 292, 293 (D.C. 1987) (upholding admission of expert testimony because "the use, sale, and packaging of [drugs] on the streets are not matters within the ken of the average lay person").

ment. This too was permissible under *Brewer* and *Boyd.*

 Finally, as the government points out, the jury was properly instructed on the burden of proof, the presumption of innocence, and the fact that the statements of counsel are not evidence. These instructions further mitigated any potential prejudice. *See Allen,* 603 A.2d at 1224 ("even if the prosecutor had argued that Allen had the burden of proof ... one would presume that the jury applied the law as stated by the judge, not the prosecutor"); *McCowan v. United States,* 458 A.2d 1191, 1197 (D.C.1983) (reiterating the well-established presumption that "the jury understood and followed [the court's] instructions").

For these reasons, we find no abuse of discretion in the trial court's denial of defense counsel's motion for mistrial.

## V

The judgment of conviction is accordingly

*Affirmed.*