**Thomas PEOPLES, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 7437.**

District of Columbia Court of Appeals.

Argued Sept. 19, 1974.

Decided Dec. 10, 1974.

John A. Keats, Washington, D. C., appointed by this court, for appellant.

Justin D. Simon, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and James F. McMullin, Asst. U. S. Attys., were on the brief, for appellee.

Before KERN and YEAGLEY, Associate Judges, and PAIR, Associate Judge, Retired.

YEAGLEY, Associate Judge:

Appellant, charged by indictment with first degree premeditated murder,[1] was found guilty by a jury of murder in the second degree. Three of the trial court rulings he assigns as error on appeal merit our consideration: (1) the refusal of the court to give an instruction that mere presence at the scene was insufficient to establish guilt; (2) the restrictions imposed on that part of defense counsel's closing argument in which it was contended that the appellant was not the gunman; and (3) allowing the prosecutor to make statements in closing argument which could have been interpreted by the jury as references to the failure of the appellant to testify. Finding no reversible error in any of these rulings, we affirm.[2]

The shocking scenario that unfolded before the jury revealed that on the evening of July 15, 1972, four men, Ernest "Blinky" Huff, Thomas Wright, John Mayo and the appellant left Richmond, Virginia, for Washington, D. C., intending to "get", or to "get the money back from", one Robert "Oogie" Hicks of the District who allegedly had recently robbed Huff of approximately $2,500. Ernest Huff, the organizer of the trip, was a narcotics distributor in Richmond for whom John Mayo and the appellant worked as pushers. The appellant, Mayo, and possibly Huff, carried pistols.

Upon arriving in Washington late that night the foursome proceeded to the White-

---

1. D.C.Code 1973, § 22–2401.

2. We find no merit in appellant's contention that the trial court abused its discretion in calling, as the court's witnesses, two key government witnesses.

law Hotel where Robert Hicks, the victim, resided. The men climbed the stairs and broke into Hicks' room, the appellant and Mayo with pistols drawn, but found the room empty. As they were leaving the hotel, Wright spotted Albert Austin, a man whom he knew to be an acquaintance of Hicks. Thinking that he was about to be robbed, Austin offered his money to the approaching foursome. Upon being asked where Oogie was, Austin initially replied that he didn't know, but after being grabbed and told "Man you know", he agreed to help them find Oogie. Austin then accompanied the four in their car and directed them to a pool hall near 14th and U Streets, N.W.

After parking across the street from the pool hall, the appellant and Huff left the car in search of Hicks. They spotted Hicks walking south on 14th Street and, as they pursued him, they passed John Griffin, a pedestrian, who was walking in the same direction with two friends. According to the testimony of Griffin, the shorter of the two assailants approached Hicks from behind and either grabbed at Hicks' wallet or shoved him, simultaneously making a brief statement to the effect that "You think you're smart." [3] Griffin testified that the taller man wearing a plaid shirt stood off to one side and, immediately after Hicks had been accosted by the shorter man, shot Hicks three or four times. Griffin, as well as his companions who were present near the scene but who did not view the actual shooting, testified that two men, one taller than the other, fled the area together.

The trio in the car panicked and left the scene at once, losing track of the appellant and Huff in the ensuing confusion, but later located the pair at the Greyhound Bus Station. By that time Huff and the appellant had discarded the gun and also their shirts in order to evade detection. The foursome then warned Austin that he

might be killed if he ever told anyone what he knew, but abruptly let him go free and drove back to Richmond.

## I

Defense counsel endeavored to convince the jury that Huff, not the appellant, was the gunman and that the appellant should be acquitted as he was merely an "unsuspecting companion" of Huff's at the time of the murder. In order to gain court approval to argue that Huff was the gunman, counsel requested an aiding and abetting and a "mere presence" instruction. The trial court's refusal to give the mere presence instruction is assigned as error. We deal with this issue first because it is the issue most crucial to a determination of whether or not appellant could have been deprived of a substantial defense.

The mere presence instruction contained in the D. C. Bar Association, Criminal Jury Instructions for the District of Columbia (2d ed. 1972) Instruction No. 4.02 reads as follows:

> Some conduct by the defendant of an affirmative character in furtherance of a common criminal design or purpose is necessary. Mere physical presence by the defendant at the time and place of the commission of an offense is not by itself sufficient to establish his guilt [however, mere presence would be enough if it is intended to and does aid the primary actor]. It is not necessary that any specific time or mode of committing the offense shall have been advised or commanded, or that it shall have been committed in the particular way instigated or agreed upon. Nor is it necessary that there shall have been any direct communication between the actual perpetrator and the defendant. (Brackets in the original.)

While an accused is entitled to an instruction on any defense which is fairly raised

---

3. Griffin was not certain precisely what the shorter man did to Hicks or what his exact words were.

by the evidence, Smith v. United States, D.C.App., 309 A.2d 58, 59 (1973); Belton v. United States, 127 U.S.App.D.C. 201, 206, 382 F.2d 150, 155 (1967), we have not been shown adequate evidence in this record to convince us that the trial court was in error in concluding that the mere presence issue was not fairly raised under the above standard.

■ Summarizing the evidence relevant to this issue, appellant came to Washington, D. C., as part of an armed foursome to help Blinky Huff either avenge a prior robbery or get his stolen money back. That the entire venture was permeated with an atmosphere of violence is evident from the fact that the men broke into Hicks' room with pistols drawn, and from the rough and threatening treatment they dealt Albert Austin when he refused to tell them where Oogie was. The undisputed evidence further shows that the appellant worked for Huff as a drug pusher, that he left the car with a pistol in his belt to accompany Huff in pursuit of Hicks, that the assailant who did not do the shooting at least shoved Hicks or grabbed him during a sharp exchange of words, and that both assailants fled together and cooperated in concealing evidence. While there is some evidence that some members of the party may have been upset and surprised when the shooting occurred, there is nothing to indicate that appellant's armed presence at the scene was not intended to at least aid Huff in the forceful collection of a debt.[4] Consequently, in light of the evidence, if the mere presence instruction were given, the court necessarily would have had to incorporate in it the following portion which is set forth in brackets in the model instruction, *supra*: "however,

mere presence would be enough if it is intended to and does aid the primary actor." Appellant can point to no evidence which suggests he was not an active participant in the criminal venture. On the basis of the record before us, we conclude that the trial court was justified in finding that the evidence was insufficient to fairly raise the issue of whether the appellant was "merely present" as an unsuspecting companion, and that it was not error to refuse to give the mere presence instruction.[5]

II

■ In considering appellant's claim that he was denied effective assistance of counsel by the trial court's restrictions on closing argument, we agree that:

> The trial court has broad discretion in controlling the scope of closing argument. That discretion is abused, however, if the court prevents defense counsel from making a point essential to the defense. [United States v. DeLoach, 504 F.2d 185, at 189 (D.C.Cir.1974) (citations omitted).]

Appellant contends that the *DeLoach* standard was violated when he was not allowed to argue that the appellant was not the tall man who did the shooting, but rather was the shorter man who accompanied the gunman. Appellant contends that there were a number of discrepancies in the testimony concerning details in the descriptions of the two assailants that had a bearing on the identity of the gunman. However, the appellant does not dispute the fact that the testimony of Wright, Mayo, and Austin consistently described the appellant on the night in question as

---

4. John Mayo, for instance, who was merely sitting as a passenger in the car at the time of the shooting, had previously pled guilty and been convicted of murder for his role in the Hicks' slaying. *Cf.* United States v. Jamison, 505 F.2d 407 (D.C.Cir. 1974).

5. We so conclude in full recognition of the proposition that, when it is a close question

of whether a potential issue has been sufficiently raised to merit jury consideration, prudence dictates that the defense counsel's request for instructions should be given the benefit of the doubt. Belton v. United States, *supra*, 127 U.S.App.D.C. at 207, 382 F.2d at 156.

the tall man with the plaid shirt and that the eyewitness testimony of John Griffin at trial also described the gunman as the taller of the two assailants and as wearing a plaid shirt.

■ The proposed argument of defense counsel was tenuous at best and necessarily based on a very selective analysis of the evidence. Although we believe that defense counsel should be allowed wide latitude in determining the strategy of closing argument as long as he does not distort the record, we cannot say that the trial court's restrictions amounted to a denial of the effective assistance of counsel or that they constituted prejudicial error, particularly in light of our earlier ruling that the record could not support an instruction on mere presence. Before it can be said that a criminal defendant has been denied effective counsel, the ruling must render counsel *so impotent "as to blot out the essence of a substantial defense or deprive him of a trial in any real sense."* Cooper v. United States, D.C.App., 248 A.2d 826, 827 (1969). The only substantial defense which counsel could have established through his strategy was mere presence and we have already determined that there was insufficient evidence to merit an instruction on this issue.[6] To have given the aiding and abetting instruction without the mere presence instruction and to have allowed unrestricted argument on the issue of whether or not the appellant was the gunman, could have thrown an even wider net of culpability around the defendant.

■ Further, even if one should view the trial court's initial ruling restricting closing argument as error, it lost the aura of harmful error when the court did in fact allow substantial closing argument to be made as to the identity of the gunman. United States v. Sawyer, 143 U.S.App.D.C. 297, 299, 443 F.2d 712, 714 (1971). While the effectiveness of the defense argument was certainly lessened by the uncertain status of the prior rulings, the issue of the identity of the gunman was clearly raised before the jury in closing argument.

III

■ Appellant finally assigns as error certain prosecutorial comments which appellant argues were references to his failure to testify or submit any evidence in his defense. In the course of an extended closing argument the prosecutor argued to the jury several times that the government's version of the case was uncontested and that there was no evidence which indicated that the appellant was not the tall gunman. We are unconvinced that prosecutorial statements such as these, in the context of a complex trial with numerous witnesses, were "manifestly intended or [were] of such character that the jury would naturally and necessarily take [them] to be a comment on the failure of the accused to testify." Doty v. United States, 416 F.2d 887, 890 (10th Cir. 1969) (citation omitted). The prosecutor's statements are more reasonably interpreted as argument that the government's case was strong and consistently supported by all of the evidence. *Compare* State v. Rouse, 206 S.E.2d 873 (S.C.1974), wherein an assault and battery case the prosecutor said ". . . it is uncontradicted what happened in that store that day."

Accordingly, the judgment of the trial court is

Affirmed.

---

6. *United States v. DeLoach, supra,* is distinguishable on this point because the attempted argument of defense counsel in that case, which the Circuit Court felt sufficiently supported by the record to merit argument, would have led to complete exoneration of the defendant.