Howard E. HALEY, Appellant,

v.

UNITED STATES, Appellee.

Nos. 97–CF–238, 99–CO–352.

District of Columbia Court of Appeals.

Argued Sept. 7, 2000.
Decided June 13, 2002.

---

Alan Dumoff, appointed by the court, for appellant.

Ayanna J. McKay, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., and Amy Conway, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ and WASHINGTON, Associate Judges, and FERREN, Senior Judge.*

PER CURIAM.

On November 4, 1996, a jury found appellant Howard E. Haley guilty of aggravated assault while armed against his girlfriend Paulette Scott. *See* D.C.Code §§ 22–504.1,–3202 (1996). Haley noted his direct appeal on February 4, 1997. On March 31, 1998, Haley filed a "Motion Pursuant to D.C.Code § 23–110 for Relief from Sentence and Motion for a New Trial Pursuant to [Superior Court] Criminal Rule 33 with Hearing Request."[1] *See* D.C.Code § 23–110 (1996); Super. Ct. Crim. R. 33. Without an evidentiary hear-

---

* Senior Judge Gallagher was a member of the division that heard oral argument in this case. Senior Judge Ferren was selected to replace him.

1. Haley's direct appeal was stayed pending the resolution of the post-conviction motions.

ing, the trial judge denied both the § 23–110 and the Rule 33 motions. Haley's appeal from that determination was consolidated with his direct appeal.

On appeal, Haley argues that (1) the trial court abused its discretion by restricting his trial counsel's closing argument impermissibly; (2) the trial court erred in concluding that the government had presented evidence sufficient to establish a prior conviction which would have permitted the government to impeach him with a prior murder conviction had he testified; (3) the trial court abused its discretion by denying his Rule 33 motion based on newly discovered evidence; and (4) the trial court abused its discretion by denying his § 23–110 motion. We reject the first three claims of error but remand for an evidentiary hearing on the ineffective assistance of counsel claim in Haley's § 23–110 motion.

## I. BACKGROUND

### A. *Factual Discussion*

At the time of the operative events, Ms. Scott shared an apartment with her seventy-two-year-old father, Paul Scott. At trial, Mr. Scott testified that he was in the apartment the night in 1996 when his daughter was injured. That night, he saw his daughter come home with a man he referred to as "Howard" and enter her bedroom with him. According to Mr. Scott, when the couple left the bedroom together some time later, his daughter was holding her stomach and there was blood on the floor. She then left the apartment, telling him that she was going to the hospital. According to Mr. Scott, "Howard" followed her out the door.

The record indicates that Mr. Scott testified at first that the person with his

daughter on the night of her stabbing was named Harold; however, he later indicated that the man's actual name was Howard. Mr. Scott also testified that prior to trial he had selected appellant's photograph from an array shown to him nearly six months after the incident. While at one point Mr. Scott revealed that he was not sure whether the person whose photograph he selected was with his daughter the night she got hurt, he later stated that the person in the picture he chose looked like "the Howard that was with [his] daughter." During cross-examination, Mr. Scott testified that he thought the picture depicted the "right man." In response to defense counsel's question whether Howard was in the courtroom, Mr. Scott stated, "I don't know."[2] On redirect, Mr. Scott revealed that he had seen Howard "a couple of times," and that his daughter had only dated one boyfriend named "Howard."

A neighbor of the Scotts testified that she was awakened by the sound of a woman calling for help outside her window on the night of the incident. The neighbor could see the woman lying on the ground, and called the police. Responding to the call, Officer Michael Terrell found Ms. Scott lying face down on the ground next to a pool of blood. Although Ms. Scott was in and out of consciousness, she told Officer Terrell that she had been stabbed by her boyfriend, Howard Haley. Officer Terrell and Detective John T. Turman subsequently followed a trail of blood that led from where Ms. Scott was lying to her bedroom in the apartment she shared with her father. Detective Turman testified that when he visited Ms. Scott in the hospital the day after the incident, Ms. Scott once

---

**2.** Appellant was present in the courtroom when this question was asked. In denying appellant's motion for judgment of acquittal, the trial court suggested that Mr. Scott's position in his wheelchair while testifying might have affected his failure to affirmatively identify Howard in the courtroom.

again identified appellant as the perpetrator. No weapon was ever recovered.

Ms. Scott testified that before the stabbing, she and appellant were celebrating Haley's birthday in her bedroom. The celebration included drinking and drug use. Ms. Scott later testified that she was in the middle of a "binge" which had started a few days before she was injured. At some point they started to argue. Ms. Scott then left her apartment and went to a friend's house nearby. Appellant found Ms. Scott at her friend's house and, according to Ms. Scott, was "kind of angry, but ... not as angry as he could have been." Ms. Scott testified that soon thereafter, she and Haley returned to her apartment and continued their drug and alcohol use. Ms. Scott further testified that Haley left the bedroom for approximately twenty minutes at one point and that, during Haley's absence, a man named "Lover" entered her bedroom and "smok[ed]" some drugs. According to Ms. Scott, she and Lover "had a little argument because [she] didn't want to go to bed with him." At some point later, Ms. Scott was stabbed. At trial, she testified that she did not remember the specific events surrounding her stabbing, and thus, could not be certain who had stabbed her. Ms. Scott also revealed that she had talked with appellant between the day of the incident and the trial.

To rebut Ms. Scott's testimony that she did not know who had stabbed her, the government introduced her earlier grand jury testimony, in which Ms. Scott had described the sequence of events surrounding her stabbing in some detail, including specifically that Haley had stabbed her with a ten-inch butcher knife in a fit of rage. At trial, Ms. Scott testified that she did not remember any of her prior grand

jury testimony because she was under the influence of drugs and alcohol at the grand jury proceeding. She also stated that, at the time of the incident and her grand jury testimony, "[she] was saying what [she] felt, because [she] was mad at [appellant]" because he was going to leave her.[3]

### B. Ruling on Impeachable Convictions

Prior to trial, the government informed appellant that if he chose to testify in his defense, it intended to impeach his testimony with a 1974 murder conviction pursuant to D.C.Code § 14–305(b) (1995) ("[F]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a criminal offense shall be admitted ... if the criminal offense (A) was punishable by death or imprisonment in excess of one year...."). Because the prior murder conviction occurred in 1974, however, and because it appears that Haley had served his sentence and completed any related parole or probation more than ten years before trial, that conviction was too stale for admission in evidence under the ten-year limitation of § 14–305(b)(2)(B). There is, however, an exception to this "stale conviction" preclusion. D.C.Code § 14–305(b)(2)(B) allows evidence of a witness's convictions older than ten years when a parole, probation, or sentence attributable to another conviction of that witness has expired within the ten years prior to the witness's testimony. *Glass v. United States,* 395 A.2d 796, 808 (D.C.1978). The government accordingly sought to introduce evidence that Haley had been convicted of assault in 1987, a conviction that could serve as a "link" permitting introduction of his twenty-two-year-old murder conviction.

---

**3.** Ms. Scott specifically stated that she was afraid that appellant was going to leave her

because of her substance abuse problem.

Conceding that the murder conviction was valid, the defense disputed the existence of the 1987 assault conviction (which had been referenced in a Pretrial Services Agency printout on May 23, 1996—the same date Haley's counsel entered his appearance—and which also had been referenced by the government in a Discovery Form completed by an Assistant United States Attorney on July 9, 1996 [4]). In response to the defense's contention, the government presented the court with a certified copy of a warrant of arrest from the Alexandria General District Court. The trial court found this document to be insufficient, standing alone, to establish the 1987 assault conviction because it was ambiguous. The next day—October 29—the court empaneled the jury, both parties gave opening statements, and the jury was excused for the day. Thereafter, a colloquy took place in which the court considered a National Crime Information Center (NCIC) report proffered by the government showing that Haley had been convicted of assault in Virginia in 1987. The court found a match between the warrant of arrest and the NCIC report with respect to the charge, the date, and the conviction. The court found the two documents sufficient to establish the existence of the 1987 conviction, and ruled that it would permit the requested impeachment if Haley chose to testify.

Testimony began on October 30. After the testimony of Detective Turman, the government indicated that it had no more witnesses for the day because the doctor who treated Ms. Scott would not be available until the next day. Out of the presence of the jury, the government offered a certified copy of the NCIC report produced the day before. The court reiterat-

ed its ruling from the previous day, noting that the three documents (the warrant of arrest, an NCIC report, and a certified NCIC report) matched in appellant's name, address, 1987 filing date, and case number. Haley's trial counsel stood on his argument that the government failed to prove the existence of the 1987 conviction. The jury was brought back to the courtroom, dismissed for the day, and the proceedings adjourned at approximately 3:05.

On October 31, the government presented testimony of the doctor and Ms. Scott. On November 1, the government completed the testimony of Ms. Scott and rested its case. Appellant elected not to testify at trial apparently as a result of the trial court's ruling that he could be impeached with the 1974 murder conviction. The defense indicated that it would present no witnesses and rested its case on November 1. While the defense did argue in colloquies throughout the trial that appellant had never been convicted of the purported assault charge, at no time did the defense present any countervailing evidence disputing the existence of the 1987 conviction prior to the trial court's decision.

### C. Post-trial Motions

Following his conviction, appellant filed the aforementioned motions pursuant to D.C.Code § 23–110 and Super. Ct.Crim. R. 33. Appellant attached thereto an affidavit executed by an official of the Alexandria Detention Center. The affidavit indicated that there was no record of appellant having served a sentence at the Alexandria jail for the 1987 assault conviction; the Alexandria jail was the only facility in which appellant would have served such a sentence; and thus, if he had actually been convicted and sentenced to serve time, a

---

4. The Discovery Form in the record has a notation indicating that it is a "court copy." At the end of the form, the government requests certain information—*e.g.* whether the

defendant would be presenting an alibi—giving rise to the reasonable conclusion that the form was directed to and received by Haley's counsel.

record should properly have existed. Accordingly, Haley argued: (1) that his sentence should be vacated and he should receive a new trial pursuant to Super. Ct.Crim. R. 33 because the affidavit and the information it provided constituted newly discovered evidence; (2) that should the court rule that this new evidence could have been discovered prior to trial—thereby denying his Rule 33 motion—relief would be appropriate under § 23–110 for ineffective assistance of counsel based on defense counsel's failure to discover the evidence; and (3) that this new information confirmed that his constitutional right to testify on his own behalf "was improperly taken from him."

While the trial court chose not to hear evidence, argument was presented on the collateral motions. In an order filed on February 2, 1999, the trial court ruled that Haley "fail[ed] to meet any of the conditions required of newly discovered evidence," and thus denied the Rule 33 motion. Therein, the trial judge also denied Haley's § 23–110 motion.

## II. DIRECT APPEAL

Even though the threatened prior conviction impeachment of Haley provides the predicate for most of Haley's claims on appeal, we must address his contentions separately, mindful of the context in which they were raised. As a part of this appeal, Haley argues: (1) the trial court abused its discretion by impermissibly restricting his trial counsel's closing argument; and (2) the trial court erred in concluding that the government had presented evidence sufficient to establish the validity of his 1987 assault conviction. We are unpersuaded by appellant's direct appeal arguments.

### A. The Trial Court did not Abuse its Discretion When it Restricted Defense Counsel's Closing Argument

■ During defense counsel's closing argument, the government objected when,

on a few occasions, counsel attempted to explain to the jury that no cross-examination of witnesses takes place during grand jury proceedings, and as a consequence, that Ms. Scott's testimony before the grand jury was not subject to confrontation. The trial court sustained the government's objections, at one point stating, "[p]rocedure of [the] grand jury is not in evidence." Appellant contends that this was an abuse of the trial court's discretion.

■ Because a trial court has broad discretion in controlling the scope of closing argument, we review a decision to restrict such argument under an abuse of discretion standard. *See Bouknight v. United States*, 641 A.2d 857, 861 (D.C.1994); *Peoples v. United States*, 329 A.2d 446, 449 (D.C.1974). "[D]iscretion is abused, however, if the court prevents defense counsel from making a point essential to the defense." *Peoples, supra*, 329 A.2d at 449 (quoting *United States v. DeLoach*, 164 U.S.App. D.C. 116, 120, 504 F.2d 185, 189 (1974)). On these facts, we cannot say that the trial court acted impermissibly. Had the lack of cross-examination in grand jury proceedings been truly "essential to the defense," it is reasonable to assume that the defense would have referenced it in the evidentiary portion of the trial. *Id.; see also Johnson v. United States*, 121 U.S.App. D.C. 19, 21, 347 F.2d 803, 805 (1965) (counsel's arguments must be based upon evidence introduced at trial). Moreover, the record reveals that counsel had—and utilized—an opportunity to argue forcefully to the jury that Ms. Scott's grand jury testimony should be discounted based on her admission that she was under the influence of illegal drugs at the time, her expressed basis for implicating appellant falsely, and the fact that the jury had been able to observe Ms. Scott's unimpaired testimony before them. *Cf. John-*

*son v. United States*, 537 A.2d 555, 561 (D.C.1988).[5]

### B. The Trial Court did not Err in Concluding that the Government had Presented Evidence Sufficient to Establish the Validity of Haley's 1987 Assault Conviction

█ Haley contends that the trial court's ruling before trial that he could be impeached with his 1974 murder conviction was erroneous because the government failed to sufficiently establish the existence of the "link" conviction, the 1987 assault conviction in Virginia, required by D.C.Code § 14–305(b)(2)(B) in this situation. The government responds first that Haley waived his arguments on this issue because he elected not to testify at trial. *See Luce v. United States*, 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (interpreting FEDERAL RULE OF EVIDENCE 609 and holding that, "[t]o raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify"). *But see Luce, supra*, 469 U.S. at 44, 105 S.Ct. 460 (Brennan, J., concurring) (asserting that, in cases "in which the determinative question turns on legal and not factual considerations, a requirement that the defendant actually testify at trial to preserve the admissibility issue for appeal might not necessarily be appropriate"). We do not agree with the government's contention that Haley's argument has been waived.

█ Whether the prosecution sufficiently established Haley's 1987 assault conviction for the purpose of § 14–305 impeachment is fundamentally a legal question. Thus, defense counsel's argument against use of the 1987 conviction for impeachment purposes adequately preserved the issue for appellate review even though Haley did not testify, particularly because it was bol-

stered by the proffer that Haley would have testified but for the threat of impeachment with his prior murder conviction. *See Bailey v. United States*, 699 A.2d 392, 399–401 (D.C.1997) (adopting *Luce, supra*, "subject to the proviso set forth in Justice Brennan's separate opinion," thereby affirming that, where the determinative question is a legal one, defendant need not testify to preserve the issue for appeal); *Wilson v. United States*, 691 A.2d 1157, 1158–59 n. 3 (D.C.1997) ("[W]here a challenged pretrial ruling turns solely upon a legal consideration on which the trial court has made a final ruling, and the testimony of the defendant is not essential to preserve the purely legal issue for appellate review, it is ripe for consideration by this court."); *Butler v. United States*, 688 A.2d 381, 388 (D.C. 1996).

█ The government also argues that the trial court did not err in concluding, prior to trial, that a factual predicate existed such that it would be appropriate to impeach Haley with his 1974 murder conviction. We agree. Section 14–305 permits a witness to be impeached with certain prior convictions. When the existence of a prior conviction is in dispute, we have previously stated:

> a prosecutor may not cross-examine a defendant about [it] unless the prosecutor has a certificate under seal as provided by § 14–305(c) or the trial judge has ruled in advance of the cross-examination or offer of proof aliunde that the government has presented sufficiently reliable proof of a prior conviction by a defendant to permit cross-examination or proof aliunde.

*Reed v. United States*, 485 A.2d 613, 619 (D.C.1984). The burden of establishing the existence of the prior conviction rests

---

**5.** Even if the ruling in question was made in error, we hold that such error was harmless.

*See Kotteakos v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

with the government. *See id.* at 618–19. However, once the government has set forth a prima facie case, either by producing the official documents referenced in § 14–305(c) or by providing "other credible evidence," the burden of going forward shifts to the defendant who may present contrary evidence. *Id.* Then, the trial court, after considering all of the evidence presented, must determine whether the government has established the existence of the conviction by a preponderance of the evidence.[6] *See id.* Section 14–305(c) provides that a "certificate, under seal, of the clerk of the court wherein the proceedings were had, stating the fact of the conviction and for what cause, shall be sufficient" to prove a prior conviction. D.C.Code § 14–305(c).

In a pretrial hearing on whether the government could impeach Haley with the 1974 murder conviction, the government produced a certificate, under seal of the Alexandria General District Court, implying that Haley had been convicted of assault in violation of Va.Code Ann. § 18.2–57 (Michie 1996) and indicating that he had been sentenced as a result of that conviction to thirty days incarceration. The certificate, entitled "Warrant of Arrest," was signed by a judge and an arresting officer, demonstrated that Haley was arrested pursuant to a warrant, indicated the imposition of a thirty-day jail sentence, alluded to an appeal bond,[7] and noted appellant's

processing and attorney's fees. However, the document contained no indication whether Haley was present in court, what his plea was, whether there was a trial, or whether he was found guilty by the trial court. Therefore, the trial court ruled that the document was ambiguous and thus insufficient standing alone to establish the existence of the 1987 assault conviction. Subsequently, however, the government presented to the trial court a printout from the NCIC criminal database and computer records from the Alexandria General District Court, which indicated that Haley had been convicted of misdemeanor assault in the same court and on the same day as that noted in the warrant of arrest document. In the absence of any contrary evidence from the defense, the trial court concluded that a notarized copy of the NCIC report (which the government provided the following day) would represent sufficient additional proof of the assault conviction to permit impeachment of Haley with the 1974 murder conviction. In the face of this impeachment threat, Haley chose not to testify.

On these facts, we cannot say that the trial court erred in concluding that the government had satisfied its burden under D.C.Code § 14–305(c), and *Reed, supra,* 485 A.2d at 619. Not only does it appear that the government provided the documentation in existence for the 1987 assault conviction contemplated by § 14–305(c),

6. The preponderance of the evidence standard requires proof that something more likely than not exists or occurred. *See Devonshire v. United States,* 691 A.2d 165, 169 (D.C. 1997); Civil Jury Instruction for the District of Columbia, No. 2–8 (1998).

7. Appellant suggests that the notice of appeal on the certificate provides additional evidence that he had not been convicted of the assault charge because no such appeal of that charge ensued. Moreover, on the same day as the alleged assault trial, appellant had been convicted in the same Alexandria court on a

concealed weapon charge, seemingly related to the assault charge. Appellant brought an appeal from that conviction, which carried a ten-day sentence, and his appeal resulted in a *nolle prosequi.* Appellant argues that, had he actually been convicted of assault that day, he would naturally have pursued an appeal of that conviction as well, particularly because the assault conviction carried a longer sentence. We do not decide here whether appellant's argument on this point is persuasive, but leave it to the trial court to consider its weight, if any, as evidence in its reconsideration on remand.

*supra,* but it also supplemented its submission with corroborating material. The original certified document presented to the court contained enough indicia of a 1987 assault conviction that, when augmented by the notarized NCIC report and the computer records from the Alexandria court, and in the absence of any countervailing evidence, sufficient credible evidence existed for the trial court to have concluded that it was more likely than not that Haley had been convicted of assault in Alexandria, Virginia in 1987. As a result, the trial court did not err when it ruled pre-trial that Haley could be impeached with his prior murder conviction if he should choose to testify.

### III. RULE 33 MOTION

■ As a part of his combined collateral motion, Haley asserted that he should be accorded a new trial pursuant to Super. Ct.Crim. R. 33 based on evidence discovered after trial suggesting that he did not serve a jail sentence for the 1987 assault conviction. Specifically, the affidavit executed by an employee of the Alexandria Detention Center asserted that an examination of the Center's records demonstrated that Haley had never served a thirty-day sentence at that location for any conviction, let alone the one at issue. The affiant also stated that the Center was the only place where Haley would have served his sentence for the purported 1987 assault conviction.

■ The requirements for granting a new trial based on newly discovered evidence pursuant to Rule 33 are well established:

> (1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the

issues involved; and (5) of such nature that in a new trial it would probably produce an acquittal.

*Wright v. United States,* 387 A.2d 582, 587 (D.C.1978) (citing *Thompson v. United States,* 88 U.S.App. D.C. 235, 236, 188 F.2d 652, 653 (1951)). We review a trial court's decision to deny a Rule 33 motion under an abuse of discretion standard. *See Payne v. United States,* 697 A.2d 1229, 1234 (D.C.1997); *Derrington v. United States,* 488 A.2d 1314, 1339 (D.C.1985), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 201 (1988).

The trial judge ruled that Haley had failed to satisfy all five of the factors listed in *Wright, supra.* Because we are convinced that the substance of the Alexandria Detention Center employee's affidavit testimony was just as accessible to, and discoverable by, the defense at trial as it was when it was ultimately secured, we need not address all of the factors enumerated in *Wright* in order to conclude that the trial court did not abuse its discretion in denying Haley's Rule 33 motion. In *Wright,* we ruled that the requirements for a new trial based on newly discovered evidence were not satisfied, in part, because potential testimony corroborating records which supported the defendant's alibi, "was readily available to the defense at the time of trial—had counsel chosen diligently to pursue it." 387 A.2d at 587. The same principle is true in this case.

Absent a showing to the contrary, nothing material in the official records of the Alexandria Detention Center with respect to the assault conviction in question would have seemingly changed between Haley's trial in 1996 and the filing of his collateral motions in 1998. The affidavit filed in support of Haley's Rule 33 motion could have been offered at the time the trial court ruled on impeachable convictions. The Pretrial Services Agency printout dated May 23, 1996—the same day Haley's

counsel entered his appearance—indicated the existence of the 1987 conviction. Also, the July 9, 1996 Discovery Form completed by an Assistant United States Attorney more than three months before trial listed the 1987 assault conviction as a prior conviction. Thus, any contention that Haley's counsel was surprised about the government's intention to rely on the 1987 conviction (as a "link" to the 1974 murder conviction for impeachment purposes) is implausible. Further, there was time for Haley to have obtained the Alexandria Detention Center employee's affidavit during trial once the government proffered the NCIC report containing the 1987 conviction. The record reflects that trial was adjourned at approximately 3:05 on October 30, and that the government did not rest its case until November 1, 1996—a day and a half later. There was adequate time to secure the affidavit, which consisted of eight substantive lines, indicating that Haley never had served time for a conviction in Alexandria District Court. On the record before us, therefore, it appears that the defense could have secured an affidavit containing similar information prior to, or during, trial "had counsel chosen diligently to pursue it." *Id.* Accordingly, the trial court did not abuse its discretion in denying Haley's Rule 33 motion.

## IV. SECTION 23–110 MOTION

On appeal, Haley challenges the trial court's resolution of his § 23–110 motion in three ways. First, he asserts that the trial court improperly overlooked his Fifth Amendment right to testify claim. Second, he argues that the trial court abused its discretion by refusing to conduct an evidentiary hearing on his claim of ineffective assistance of trial counsel. Third, he posits that the trial court concluded erroneously that his trial counsel was not constitutionally ineffective. The second and third contentions concerning ineffective assistance properly are considered together.

### A. Whether the Trial Court Abused its Discretion by not Analyzing Appellant's Fifth Amendment Claim in his Section 23 110 Motion

■ In his § 23–110 motion, Haley argued: (1) that his trial counsel was constitutionally ineffective under the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); and (2) that, in light of the unconvincing evidence presented pre-trial to prove the 1987 assault conviction and the new evidence uncovered since trial, his Fifth Amendment right to testify in his own defense was violated.[8] Haley's appel-

8. As a part of its opposition to the underlying § 23–110 motion, the government asserted that Haley's motion consisted only of an ineffective assistance of counsel claim. In his § 23–110 motion, Haley argued that in light of the new evidence indicating that he had not served a sentence in the Alexandria Detention Center, he "cannot reasonably be found to have suffered a conviction in the past ten years … [and, his] Constitutional right to testify in his own defense was therefore abrogated." Haley then proceeded to state, "Given the Constitutional nature of [the] right to explain directly to the jury what happened the evening of the stabbing, the highly prejudicial impact that the 1974 murder conviction would have had on the jury, and the current demonstration that the conviction should not have been available to the Government, [his] sentence should be vacated." These claims were both made under section II of the § 23–110 motion entitled, "Mr Haley Should Not Have Been Subject to Impeachment for the 1987 Assault or for the 1974 Murder Conviction; Mr. Haley's Fifth Amendment Right to Testify on His Own Behalf Was Improperly Taken From Him." Accordingly, we conclude that appellant sufficiently articulated his claim that his constitutional right to testify in his own defense had been infringed as well. Therefore, we consider his Fifth Amendment claim under § 23–110 independent of his ineffective assistance of counsel claim.

late brief indicates that his § 23–110 counsel was prepared to elicit testimony at an evidentiary hearing, but the trial court ruled on the § 23–110 motion without a hearing. Both parties did present argument there, however. While Haley's counsel was arguing that *Strickland* (and its prejudice standard) was inapplicable to the right to testify claim, the trial court interjected and stated that "23–110 is designed for ineffective assistance of counsel for a constitutional defect ... and it does not touch other constitutional defects." Haley's counsel disagreed, contending that § 23–110 was not limited to ineffective assistance of counsel claims. After some discussion and at the behest of the court, the parties submitted supplemental memoranda addressing the scope of § 23–110. In its submission, the government conceded that the scope of § 23–110 was broader than that contemplated by the trial court.

As appellant pointed out to the trial court, while § 23–110 motions are often predicated on ineffective assistance of counsel, the language of the statute and our past decisions make clear that § 23–110, as a vehicle for attacking a sentence, is not limited to such claims. *See* D.C.Code § 23–110 (A prisoner in custody may move the court to vacate, set aside or correct a sentence if "the sentence was imposed in violation of the Constitution of the United States or the laws of the District of Columbia....").

Despite the supplemental briefing on the scope of § 23–110, the trial court's written order denying the § 23–110 motion did not address substantively appellant's claim that his Fifth Amendment right had been violated. In the order, the trial court seemed initially to understand Haley to be "claim[ing] ineffective assistance of counsel

*and* judicial error depriving the defendant of his Constitutional Right to testify at his trial." (Emphasis added). In the next sentence, however, the trial judge narrowed the scope of the inquiry by stating, "The defendant specifically alleges that his counsel failed to prevent the Court from ruling that a conviction for assault in Virginia provided the continuity of supervision required under D.C.Code § 14–305 to impeach the defendant with a prior homicide which would have been beyond the 10 year limitation without acceptance of the assault conviction." The trial court's order continued to merge appellant's Fifth Amendment claim with his ineffectiveness claim when it set forth the rationale for denying the § 23–110 motion:

> The defendant's *claim pursuant to D.C.Code § 23–110* is also [9] without merit as it *is based on claims of ineffective assistance of counsel. Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), requires that to receive a new trial, a defendant must show that his attorney committed errors 'so serious as to deprive the defendant of a fair trial whose result is unreliable' [sic]. This requires an initial showing that, but for counsel's performance it is likely the defendant would have been acquitted. In this instant case, trial counsel placed the issue of the prior conviction and perceived deficiencies before the court on no less that three occasions. The Court found that the law and record did not support a finding that the 1987 Virginia assault conviction was inaccurate or erroneous or constitutionally defective. The Court's denial of counsel's motion to bar impeachment of the defendant with the prior homicide should he take the wit-

---

9. The word "also" here refers to the preceding ruling in the order denying Haley's Rule 33 motion as being without merit. No other portion of the order elaborates upon the rationale for denying appellant's Fifth Amendment-based § 23–110 claim.

ness [stand] does not render trial counsel's performance ineffective. Further, there is no indication in this record, as previously discussed, that the defendant would have been acquitted had he testified. Counsel did everything he could to create a situation wherein defendant could testify without fear of impeachment.

Therefore, this Court finds that the defendant has failed to make a sufficient showing to support a new trial under Sup.Ct. Cr. R 33, newly discovered evidence, *D.C.Code § 23–110 ineffective assistance of counsel or D.C.Code § 23–110 deprivation of due process in violation of the Constitution by failure to provide an opportunity for defendant to testify.*

(Emphasis added).

In the absence of discussion of appellant's Fifth Amendment claim elsewhere in the order, and considered in the context of the preceding paragraph, the first and last sentences of the quoted section above suggest a belief by the trial court that appellant's claim of denial of his Fifth Amendment right to testify rests only upon determination of whether his counsel failed to provide him with an opportunity to testify. Thus, although the order alluded to Haley's Fifth Amendment claim on two occasions, the trial court appeared to continue treating all of the claims in Haley's § 23–110 motion as exclusively implicating ineffective assistance of counsel. Further, all of the order's substantive analysis of the § 23–110 allegations concerns the application of the *Strickland* standard to the facts at hand, a standard which is reserved for post-trial claims of ineffective assistance. We conclude, accordingly, that the trial court erred in failing to address separately Haley's Fifth Amendment right to testify claim. As explained below, however, the error was harmless beyond a reasonable doubt.

*Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

We have recognized that a defendant's right to testify in his own defense is fundamental. *See Boyd v. United States,* 586 A.2d 670, 672 (D.C.1991). This case presents a question concerning the right to testify that differs from the issue in *Boyd* and later cases, in which we considered whether a defendant knowingly and intentionally had waived his right to testify. *See Moctar v. United States,* 718 A.2d 1063, 1066 (D.C.1998); *Bowman v. United States,* 652 A.2d 64, 74 (D.C.1994); *Johnson v. United States,* 613 A.2d 888, 894 (D.C.1992); *Hunter v. United States,* 588 A.2d 680, 681 (D.C.1991). Here, Haley does not contend that he made an unknowing or unintentional waiver. Haley's Fifth Amendment claim, rather, is based on two different, wholly independent premises. First, he claims that the trial court erred in finding that the evidence initially before the trial court—consisting of two documents, the "Warrant of Arrest" and the notarized NCIC report—was sufficient to support a finding of the existence of a 1987 assault conviction. Haley argues that because the required "link" conviction was not established by these documents, and because he therefore could not have been impeached with his 1974 murder conviction, he was deterred, unconstitutionally, from testifying in his own behalf. Second, Haley contends that in light of a third document, the affidavit from an official at the Alexandria Detention Center allegedly indicating that he had not been convicted of assault in 1987, he effectively had been denied the right to testify *a fortiori.* (This argument assumes, of course, that the trial judge necessarily would have concluded from the affidavit—had it been before the court for consideration—that Haley had not been convicted of assault in 1987.)

We note immediately that Haley's second argument inherently is flawed since the detention center affidavit did not exist—and thus could not have been considered—at the time the trial court ruled on impeachable convictions. A judge cannot be held to have erred in failing to consider evidence not yet discovered and proffered to the court. Accordingly, we cannot say the trial court's failure to rely on the affidavit contributed to any Fifth Amendment violation at the time Haley was confronted by the decision whether or not to testify. If, to the contrary, the Fifth Amendment inquiry were held to embrace the later affidavit, then a violation would depend on a finding of ineffective assistance of counsel in failing to bring the affidavit to the court's attention at trial; there would be no other basis for explaining how Haley had been denied the right to testify. The efficacy of the affidavit, therefore, is limited to the Rule 33 motion based on newly discovered evidence, which we have rejected, and on Haley's ineffective assistance of counsel claim, which we address below in Part IV. B.

We are left, then, with Haley's first point: that the trial court's impermissible reliance on the "Warrant of Arrest" and NCIC report to establish the 1987 "link" conviction effectively denied him his Fifth Amendment right to testify, because that linking would have permitted impeachment with the inadmissible 1974 murder conviction. Haley's argument, presented to the trial court in a Fifth Amendment collateral attack under D.C.Code § 23–110, amounts to no more than a motion for reconsideration of the trial judge's ruling. This is the very argument we address on direct appeal, where already we have concluded that the trial judge did not err in ruling that the government produced adequate documentation at the time of trial—the "Warrant of Arrest" and the NCIC report—showing that Haley had been convicted of assault in 1987. Under these circumstances, therefore, the trial court's failure to address Haley's Fifth Amendment claim in his collateral attack on the conviction under § 23–110, while technically in error, was harmless beyond a reasonable doubt.

### B. Whether the Trial Court Abused its Discretion by not Conducting an Evidentiary Hearing on Haley's Ineffective Assistance Claim in the Section 23–110 Motion

We review a decision not to conduct an evidentiary hearing on a § 23–110 motion for ineffective assistance of counsel under an abuse of discretion standard. *See Little v. United States*, 748 A.2d 920, 922 (D.C.2000). While there is a presumption in favor of such hearings, *see Webster v. United States*, 623 A.2d 1198, 1206 (D.C. 1993); *Ready v. United States*, 620 A.2d 233, 234 (D.C.1993), we have previously stated that "[w]here the existing record provides an adequate basis for disposing of the motion, the trial court may rule on the motion without holding an evidentiary hearing." *Ready, supra*, 620 A.2d at 234 (citing D.C.Code § 23–110). In addition, we have specifically identified § 23–110 claims that do not merit hearings: (1) vague and conclusory allegations; (2) palpably incredible claims; and (3) allegations that would merit no relief even if true. *See Dobson v. United States*, 711 A.2d 78, 83 (D.C.1998); *Ramsey v. United States*, 569 A.2d 142, 147 (D.C.1990).

As stated above, after electing to forego an evidentiary hearing, the trial court ruled, by written order, that appellant's trial counsel did not perform deficiently under the standard set forth in *Strickland*, and in addition, that appellant Haley could not satisfy *Strickland's* prejudice standard. *See Strickland, supra*, 466 U.S. at 687, 694, 104 S.Ct. 2052, (counsel's performance is deficient if counsel made errors so egregious that he or she was not

functioning as the counsel guaranteed by the Sixth Amendment; counsel's performance prejudiced the defense if there was a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different). Particularly, in light of the presumption in favor of a hearing on a § 23–110 motion, the decision not to conduct an evidentiary hearing under the circumstances presented in this case constituted an abuse of discretion.

Given the uncertainty created by the trial testimony of Ms. Scott, who acknowledged a motive for blaming appellant falsely and was unsure as to who had stabbed her, and of her father, who seemed confused as to the identity of appellant, a legitimate question exists regarding prejudice caused by counsel's failure to uncover evidence showing that appellant was not convicted of assault in Alexandria in 1987. Moreover, even though Haley's trial counsel challenged the existence of the 1987 conviction and forcefully argued against its admission, this does not automatically mean that he was not constitutionally deficient in failing to discover and introduce supporting evidence. Evidence concerning Haley's expected trial testimony, communications between Haley and his trial counsel about the 1987 assault conviction, and any "new" facts about the 1987 conviction uncovered since trial could all have been probative of both the deficiency and preju-

dice prongs of *Strickland*. Accordingly, we believe further inquiry was required to determine whether Haley's trial counsel was constitutionally defective in failing to uncover evidence refuting the alleged 1987 conviction. *Cf. Little, supra*, 748 A.2d at 922–23.

We remand for further proceedings in conjunction with the trial court's inquiry, *see supra* Part IV. A, into appellant's ineffective assistance of counsel claim. If the trial court determines that the 1987 conviction is still proved by a preponderance of the evidence, even in light of the affidavit of the official from the Alexandria Detention Center, then there can be no substantial prejudice resulting from trial counsel's failure to bring that evidence to light; trial counsel's deficiency, if any, would be irrelevant, and no further inquiry would be required on the ineffectiveness claim. However, if the trial court reaches a contrary conclusion regarding the proof of the 1987 conviction, then the trial court should determine whether counsel's failure to obtain the affidavit in time for trial resulted in prejudice within the meaning of *Strickland's* second prong.

*So ordered.*